No. 2--96--0101

IN THE 

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court 

OF ILLINOIS, ) of Lake County.

)

Plaintiff-Appellee, ) 

) 

v. ) No. 95--CF--2160 

) 

GARY REEDY, ) Honorable 

) Raymond J. McKoski,

Defendant-Appellant. ) Judge, Presiding.

 

JUSTICE McLAREN delivered the opinion of the court:

Defendant, Gary Reedy, was convicted by a jury of aggravated battery with a firearm (720 ILCS 5/12--4.2(a)(1) (West 1996)) and was sentenced to 15 years in prison.  Under the "truth-in-sentencing" provisions of section 3--6--3(a)(2)(ii) of the Unified Code of Corrections, defendant is eligible to receive no more than 4.5 days of good conduct credit for each month of his sentence.  730 ILCS 5/3--6--3(a)(2)(ii) (West 1996).     

On appeal, defendant argues that the truth-in-sentencing provisions of section 3--6--3(a)(2)(ii) are unconstitutional and therefore unenforceable.  In support, defendant first contends that Public Act 89--404 (Public Act 89--404, eff. August 20, 1995), in which the legislature enacted section 3--6--3(a)(2)(ii), violates the single subject rule of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IV, §8(d)).  Defendant also argues that section 3--6--3(a)(2)(ii) violates the equal protection clause (U.S. Const., amend. XIV, §1; Ill Const. 1970, art. I, §2) by treating similarly situated offenders in a dissimilar manner.  In response, the State first contends that defendant may not challenge section 3--6--3(a)(2)(ii)'s constitutionality on direct appeal.  Alternatively, the State argues that section 3--6--3(a)(2)(ii) is constitutional.  For the reasons set forth below, we agree with defendant that the legislature enacted section 3--6--3(a)(2)(ii) in violation of the single subject rule.

I.  DIRECT APPEAL

The State initially argues that defendant may not challenge  section 3--6--3(a)(2)(ii)'s constitutionality on direct appeal.  In support, the State cites the opinion in 
People v. Watford
, No. 3--96--0315 (December 2, 1997), of the Appellate Court, Third District.

In 
Watford
, the defendant raised the same issue that defendant raises in this appeal, namely, whether section 3--6--3(a)(2)(ii)'s truth-in-sentencing provisions are constitutional
.  The court concluded, without any citation to authority, that a defendant subject to truth-in-sentencing legislation cannot challenge the constitut
ionality of that legislation on direct appeal.  
Watford
, slip op. at 1-2.  
Watford
 explained that, because the responsibility for enforcing the truth-in-sentencing laws lies with the Department of Corrections and not with the trial court, those laws are "not intended to be a condition of the defendant's sentence," have "no legal effect on the sentencing proceeding," and are "a matter outside the scope of the sentencing proceedings."  
Watford
, slip op. at 2-4.  Consequently, to challenge the constitutionality of the truth-in-sentencing laws, a defendant first must wait for the Department of Corrections to calculate his good-time credit.  
Watford
, slip op. at 4.  The defendant then may file a 
habeas corpus
, 
mandamus
, or declaratory judgment action alleging that the Department of Corrections is calculating his credit improperly.  
Watford
, slip op. at 4.  

We are not persuaded by 
Watford
.  In Illinois, a criminal defendant possesses the right to appeal directly from any sentence imposed for a felony conviction.  730 ILCS 5/5--5--4.1 (West 1996).  Illinois courts have long recognized that good-time credit is a part of every sentence.  See, 
e.g.
, 
People ex rel. Colletti v. Pate
, 31 Ill. 2d 354, 357 (1964) (good time is "a part of every sentence"); 
People v. Baptist
, 284 Ill. App. 3d 382, 387 (1996) ("compliance with conditions for awarding good-time credit is one of the terms of the original sentence").  Indeed, this court has held on numerous occasions that, because good-time credit is "’inherent in every sentence of imprisonment,’" a sentencing court may consider the possibility of good-time credit when fashioning a defendant's sentence.  See 
People v. Fetter
, 227 Ill. App. 3d 1003, 1009 (1992); 
People v. Clankie
, 180 Ill. App. 3d 726, 733 (1989); 
People v. Torgeson
, 132 Ill. App. 3d 384, 389 (1985).  If the nexus between good-time credit and the defendant's sentence allows the trial court to factor in the former when imposing the latter, it likewise allows a defendant to question the validity of the former on direct appeal of the latter.

Moreover, even if good-time credit were not "inherent in every sentence of imprisonment" as a general matter, it is inherent in every sentence subject to the truth-in-sentencing laws.  Section 5/5--4--1(c--2) of the Unified Code of Corrections compels the trial court 
at the defendant's sentencing hearing
 to (1) inform the public that the defendant is subject to section 3--6--3(a)(2)(ii)'s truth-in-sentencing provisions, and (2) based upon the application of those provisions, advise the public of "the actual period of time this defendant is likely to spend in prison as a result of 
this sentence
."  (Emphasis added.)  730 ILCS 5/5--4--1(c--2) (West 1996).  Significantly, section 5--4--1(c--2) is itself part of the truth-in-sentencing legislation enacted by Public Act 89--404.  Thus, by its own terms, the truth-in-sentencing act injects itself into a defendant's sentencing hearing.  We therefore cannot agree with 
Watford
's conclusion that the truth-in-sentencing act has "no legal effect on the sentencing proceeding" and is "a matter outside the scope of the sentencing proceedings."  
Watford
, slip op. at 3-4.  

Accordingly, contrary to 
Watford
, we hold that a defendant subject to section 3--6--3(a)(2)(ii)'s truth-in-sentencing provisions may challenge the constitutionality of those provisions on direct appeal.  We therefore proceed to the merits of defendant's appeal.   

II.  THE SINGLE SUBJECT RULE

We next address defendant's contention that section 3--6--3(a)(2)(ii) is unconstitutional because it was enacted in violation of the single subject rule of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IV, §8(d)).

A.  BACKGROUND

Section 3--6--3(a)(2)(ii), in its current form, was enacted on August 20, 1995, as part of Public Act 89--404.  Prior to Public Act 89--404's enactment, a person convicted of aggravated battery with a firearm was eligible to receive one day of good conduct credit for each day of service in prison.  See 730 ILCS 5/3--6--3(a)(2)(West 1994).  Effective August 20, 1995, Public Act 89--404 amended section 3--6--3(a)(2) to state that a person convicted of aggravated battery with a firearm is eligible to receive only 4.5 days of good conduct credit for each month of his sentence.  In this case, the trial court sentenced defendant under the amended version of section 3--6--3(a)(2) (730 ILCS 5/3--6--3(a)(2)(ii) (West 1996)).

Defendant's primary argument in this appeal is that Public Act 89--404 violates the single subject rule of the Illinois Constitution.  The single subject rule governs the method by which legislation is enacted.  
Johnson v. Edgar
, 176 Ill. 2d 499, 503 (1997).  Therefore, before analyzing whether Public Act 89--404 complies with the single subject rule, we will examine both the procedural history and the substance of that Act.  See  
Johnson
, 176 Ill. 2d at 503.        

1.  Procedural History

Public Act 89--404 began its life on March 3, 1995, as Senate Bill 1187.  Entitled "A Bill for an Act concerning the insanity defense," Senate Bill 1187 originally (1) increased the burden of proof for a defendant asserting the insanity defense, (2) redefined the term "insanity," and (3) revised the procedures governing petitions for the transfer or release of defendants found not guilty by reason of insanity.  On April 25, 1995, the Senate passed the Bill without amendment.

When it reached the House of Representatives, Senate Bill 1187 experienced considerable growth through a series of amendments.  In one of its amendments, the House deleted the Bill's entire text and started from scratch.  No longer confined to the insanity defense, Senate Bill 1187 now also addressed such topics as (1) the duties and jurisdiction of local law enforcement officials, (2) asset forfeiture proceedings arising from drug offenses, (3) truth-in-sentencing, and (4) the perfection and attachment of hospital liens.  Recognizing that the Bill's original title no longer was accurate, the House renamed Senate Bill 1187 "An Act in relation to governmental matters, amending named Acts."  The House passed Senate Bill 1187 with these amendments and sent it back to the Senate.

On May 24, 1995, the Senate considered and debated Senate Bill 1187 in its amended form.  Unlike the debate that preceded the Senate's April 25, 1995, vote, this debate did not in any way address the Bill's insanity defense provisions.  Instead, the debate was confined solely to the Bill's truth-in-sentencing provisions.  At the close of the debate, the Senate voted on and passed Senate Bill 1187 as amended by the House.

 On June 22, 1995, Senate Bill 1187 was sent to Governor Edgar for signature.  On August 20, 1995, Governor Edgar approved the Bill and signed it into law as Public Act 89--404.

2.  Substantive Provisions

In its enacted form, Public Act 89--404 contains 10 sections covering an impressive array of subjects.  Section 5 amends the Counties Code to redefine the sheriff's duties as "conservator of the peace."  Similarly, section 10 amends the Illinois Municipal Code to redefine the local police department's duties as "peace officers."

Section 15 amends the Criminal Code of 1961 to (1) increase the burden of proof for a defendant asserting the insanity defense and (2) redefine the term "insanity."

Section 20 amends the Cannabis Control Act to provide for a new distribution of the proceeds from an asset forfeiture sale conducted pursuant to that Act.  

Section 25 amends the Illinois Controlled Substances Act to (1) allow multiple convictions and sentences for persons who violate that Act with respect to more than one type of controlled substance, (2) define each violation of that Act as a separate offense, (3) impose sentencing guidelines for persons convicted of violating that Act, and (4) provide for a new distribution of the proceeds from an asset forfeiture sale conducted pursuant to that Act.

Section 30 amends the Code of Criminal Procedure of 1963 to (1) define the term "law enforcement agency" and (2) expand a police officer's power to make arrests outside of his or her jurisdiction.

Section 35 amends the Drug Asset Forfeiture Procedure Act by deleting the requirement that judicial 
in rem
 proceedings be held by the court and without a jury.

Section 40 amends the Unified Code of Corrections to (1) revise the rules and regulations governing good conduct credit and early release, (2) create the Illinois Truth-in-Sentencing Commission, (3) redefine the term "insanity," (4) revise the procedures governing petitions for the transfer or release of defendants found not guilty by reason of insanity, and (5) create new procedures for certain sentencing hearings.

Section 45 amends the Code of Civil Procedure to state that the homestead exemption does not apply to property subject to certain drug asset forfeiture proceedings.

Section 50 amends the Hospital Lien Act to (1) create a new title for that Act, (2) include within that Act all hospitals operated by a unit of local government, and (3) revise the procedures for the perfection and attachment of hospital liens.

In sum, Public Act 89--404 addresses at least five legislative subjects and amends nine statutory codes covering both civil and criminal matters.

B.  GOVERNING LAW

Found in Article IV, section 8, of the Illinois Constitution of 1970, the single subject rule provides, in pertinent part:

"Bills, except bills for appropriations and for the codification, revision or rearrangement of laws, shall be confined to one subject."  Ill. Const. 1970, art. IV, §8(d).

Because the single subject rule is a substantive, rather than a procedural, requirement for the passage of bills, an alleged violation of the rule is subject to judicial review.  
Johnson
, 176 Ill. 2d at 514.

In a recent decision, the Illinois Supreme Court explained that the single subject rule serves two purposes.  First, the rule exists to prevent the passage of legislation that, standing alone, could not muster the votes necessary for passage.
  
Johnson
, 176 Ill. 2d at 514; see also 
Geja's Café v. Metropolitan Pier & Exposition Authority
, 153 Ill. 2d 239, 258 (1992).  Characterizing the practice as "log-rolling," the Illinois Supreme Court regards the combining of several unpopular and unrelated measures into one popular omnibus bill as "'"both corruptive of the legislator and dangerous to the State."
'"  
Geja's Café
, 153 Ill. 2d at 257-58, quoting 
Fuehrmeyer v. City of Chicago
, 57 Ill. 2d 193, 201-02 (1974), quoting 
People ex rel. Drake v. Mahaney
, 13 Mich. 481, 494-95 (1865).

The second purpose of the single subject rule is the facilitation of an "orderly legislative procedure."  
Johnson
, 176 Ill. 2d at 514.  Given the volume of legislation that is introduced in the legislature each year, an individual legislator may be unable to appreciate all of the nuances and implications of a bill containing numerous unrelated provisions.  By limiting each bill to a single subject, the legislature can better grasp and more intelligently discuss the issues each bill presents.  
Johnson
, 176 Ill. 2d at 514-15, citing M. Rudd, 
No Law Shall Embrace More Than One Subject
, 42 Minn. L. Rev. 389, 391 (1958).  Thus, the single subject rule is designed also to ensure that the legislature directly addresses the difficult decisions it faces.  
Johnson
, 176 Ill. 2d at 515.

That said, in the constitutional sense, the term "subject" is comprehensive in scope and must be construed liberally.  
People v. Dunigan
, 165 Ill. 2d 235, 255 (1995).  So long as the provisions of a bill have a "natural and logical connection," the subject of that bill may be as broad as the legislature chooses.  
Johnson
, 176 Ill. 2d at 515.  The legislature violates the single subject rule only when it includes within a single bill incongruous and unrelated matters that by no fair intendment have any legitimate relation to each other.  
Johnson
, 176 Ill. 2d at 515; 
Dunigan
, 165 Ill. 2d at 255.

C.  ANALYSIS

It is well established that legislative enactments enjoy a heavy presumption of constitutionality.  
In re Marriage of Lappe
, 176 Ill. 2d 414, 422 (1997).  Moreover, the single subject rule does not impose an onerous restriction on the legislature's actions but rather leaves the legislature with wide latitude in determining the content of bills.  
Johnson
, 176 Ill. 2d at 515.  As the Illinois Supreme Court has noted, the legislature "must indeed go very far to cross the line to a violation of the single subject rule."  
Johnson
, 176 Ill. 2d at 515-16.

With these principles in mind, we hold that, in enacting Public Act 89--404, the legislature clearly crossed the line and violated the single subject rule of the Illinois Constitution.  Public Act 89--404 began as a narrowly tailored bill confined solely to the use of the insanity defense in criminal proceedings.  As enacted, Public Act 89--404 addresses no less than five distinct legislative subjects and amends nine different statutory codes covering both civil and criminal matters.  Among Public Act 89--404's highlights are (1) the removal of the homestead exemption from property subject to certain civil forfeiture proceedings, (2) an increase in the burden of proof for a criminal defendant asserting the insanity defense, (3) truth-in-sentencing legislation, and (4) new procedures for the perfection and attachment of hospital liens.  After long and careful reflection, this court simply is unable to identify the "natural and logical connection" uniting civil forfeiture, criminal sentencing, and hospital liens.  Accordingly, we hold that Public Act 89--404 violates the single subject rule and therefore is unconstitutional in its entirety.

In reaching this conclusion, we note that, according to the legislative debates surrounding Senate Bill 1187, Senate Bill 1187's violation of the single subject rule led directly to the evils that the single subject rule was designed to prevent.  Again, when the Senate sent Senate Bill 1187 to the House, the Bill addressed only the use of the insanity defense in criminal proceedings.  When Senate Bill 1187 returned from the House, it contained 10 sections addressing a broad range of both criminal and civil subjects.  Explaining the Bill's metamorphosis to his colleagues, Senator Dillard, Senate Bill 1187's chief sponsor, stated that, although truth-in-sentencing was "
the major part
 of the [House's] amendment," that amendment "also 
adds a number of other bills
 that passed almost unanimously over in this Body earlier this year."  (Emphasis added.) 89th Gen. Assem., Senate Proceedings, May 25, 1995, at 60 (statements of Senator Dillard).  Thus, although the Senate originally considered each of Senate Bill 1187's various provisions in separate bills, the House amendment now forced the Senate to consider them 
en masse
.  

Later in the debate, Senator Cullerton recognized the dilemma presented by the House's drastic revision of Senate Bill 1187:

"There are some things that were thrown in here, like all conference committees
 that --
 are things which I would perhaps not wish to vote for, because there must be at least ten or fifteen bills
.  But overall, the main part of the bill is the truth-in-sentencing ***.  And I also urge an Aye vote."  (Emphasis added.)  89th Gen. Assem., Senate Proceedings, May 25, 1995, at 65 (statements of Senator Cullerton).

The Illinois Supreme Court has explained that the single subject rule exists 
"to prevent the combination of unrelated subjects in one bill to obtain support for the package as a whole, when the separate parts could not succeed on their individual merits."  
County of Kane v. Carlson
, 116 Ill. 2d 186, 214 (1987).  Although we have no way of knowing whether Senate Bill 1187's separate parts could have succeeded on their individual merits, Senator Cullerton's comments confirm that, with respect to Senate Bill 1187, the purposes of the single subject rule were not served. 

Nevertheless, the State offers two theories to support Public Act 89--404's constitutionality.  First, the State insists that an examination of Public Act 89--404's title reveals that Public Act 89--404 embraces a single subject: governmental matters.  We find that this “subject” is too broad to satisfy the Illinois Constitution’s mandates.  See 
Johnson
, 176 Ill. 2d at 515 (a statute’s substantive provisions must have a “natural and logical connection”).  After all, every legislative enactment is, by definition, a “governmental matter.”  For example, a survey of the index to the Illinois Compiled Statutes reveals that every heading relates to a matter involving the government.  As a result, we find that, to satisfy the single subject rule, the subjects in a statute must have something in common other than the fact that they all address some aspect of the government.  Indeed, by suggesting that the legislature may include anything within a single bill as long as it relates to a “governmental matter,” the State is, in effect, arguing for the single subject rule’s repeal.  Accordingly, we respectfully reject the State’s position. 

The State next argues that Public Act 89--404 is constitutional because it is a "revisory bill" and therefore exempt from the single subject rule.  According to the State, Public Act 89--404 is revisory because it does not create any new statutes but merely amends existing provisions of existing legislation. 

The State misunderstands the meaning of "revisory bill."  As the Illinois Supreme Court has explained, for purposes of the single subject rule, a revisory bill is one that makes no substantive changes and adds no new matter to existing legislation.  
People v. Bullard
, 61 Ill. 2d 277, 278, 283-84
 (1975); see also 
Heitz v. Hogan
, 134 Ill. App. 3d  352, 358 (1985).  Instead, a revisory bill merely incorporates the provisions of prior legislative amendments.  
Bullard
, 61 Ill. 2d at 278, 283-84
; 
Heitz
, 134 Ill. App. 3d  at 358.  Under this definition, Public Act 89--404 is not a revisory bill.  Public Act 89--404 makes substantive changes to numerous existing statutes, including the Counties Code, the Municipal Code, the Criminal Code of 1961, the Code of Civil Procedure, and the Hospital Lien Act.  In addition, Public Act 89--404 adds new matter to several existing statutes, including the Unified Code of Corrections and the Code of Criminal Procedure of 1963.  Finally, Public Act 89--404 incorporates the provisions of no prior legislative amendments.  Thus, under 
Bullard
 and 
Heitz
, Public Act 89--404 fails every measure of a revisory bill.  We therefore conclude that Public Act 89--404 is not exempt from the single subject rule.

In sum, we conclude that Public Act 89--404 violates the single subject rule of the Illinois Constitution of 1970 and therefore is invalid and unenforceable in its entirety.  We emphasize, however, that our ruling does not address the substantive constitutionality of Public Act 89--404's individual components.  Rather, our ruling goes only to Public Act 89--404's structure and the manner in which it was enacted.  Thus, the legislature is free to revisit Public Act 89--404's various provisions in future legislation.  See 
Johnson
, 176 Ill. 2d at 512.

III.  THE EQUAL PROTECTION CLAUSE

Having concluded that Public Act 89--404 was enacted in violation of the single subject rule of the Illinois Constitution of 1970, we need not address defendant's argument that the truth-in-sentencing provisions contained in section 3--6--3(a)(2)(ii) of the Unified Code of Corrections (730 ILCS 5/3--6--3(a)(2)(ii) (West 1996)) violate the equal protection clause.

IV.  CONCLUSION

We conclude that Public Act 89--404 is unconstitutional in its entirety and that the State of Illinois and all of its officers and agents are permanently enjoined from enforcing any and all of its provisions.  Defendant therefore is eligible to receive the good conduct credit that he would have been eligible to receive prior to Public Act 89--404's enactment.

For the foregoing reasons, the judgment of the circuit court of Lake County is affirmed as modified.

Affirmed as modified.

COLWELL and THOMAS, JJ., concur.