THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LORADELE WIGGINS, Defendant-Appellant.

First District (1st Division)   No. 1—97—0961

Opinion filed August 17, 1998.

Rita A. Fry, Public Defender, of Chicago (James M. Perlman, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, Veronica X. Calderon, and Mary L. Boland, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'BRIEN delivered the opinion of the court:

On June 20, 1996, defendant, Loradele Wiggins, was charged by indictment with unlawful use of a weapon in violation of section 24—1(a)(10) of the Criminal Code of 1961 (720 ILCS 5/24—1(a)(10) (West 1992) (as amended)) (the Criminal Code). On February 11, 1997, following a bench trial, defendant was convicted and sentenced to one year's felony probation under section 24—1(b) of the Criminal Code. 720 ILCS 5/24—1(b) (West 1994). Defendant appeals.

On appeal, defendant contends: (1) Public Act 88—680 which, among other things, amended section 24—1(b) of the Criminal Code by upgrading a conviction for unlawful use of a weapon under section 24—1(a)(10) from a Class A misdemeanor to a Class 4 felony, violated the Illinois Constitution's single subject rule (Ill. Const. 1970, art. IV,

§ 8(d)); and (2) she was denied effective assistance of counsel. We affirm.

■ Article IV, section 8(d), of the Illinois Constitution provides in pertinent part: "Bills, except bills for appropriations and for the codification, revision or rearrangement of laws, shall be confined to one subject." Ill. Const. 1970, art. IV, § 8(d). Recently, in *Johnson v. Edgar*, 176 Ill. 2d 499, 514-18, 680 N.E.2d 1372, 1379-81 (1997), the Supreme Court of Illinois discussed this provision, stating:

> "The single subject rule is a substantive requirement for the passage of bills and is therefore subject to judicial review. ***
>
> The term 'subject,' in this context, is to be liberally construed and the subject may be as broad as the legislature chooses. [Citations.] Nonetheless, the matters included in the enactment must have a natural and logical connection. [Citations.] The rule prohibits the inclusion of ' "Discordant provisions that by no fair intendment can be considered as having any legitimate relation to each other." ' [Citations.]" *Johnson*, 176 Ill. 2d at 514-15, 680 N.E.2d at 1379.

First, we examine Public Act 88—680. Public Act 88—680 was introduced in the Senate as Bill 1153 (SB 1153) and entitled, "An Act to amend the Criminal Code of 1961 by changing Sections 12—1, 25—1, and 26—1 and by adding Section 24—7." In this form, the purpose of SB 1153 was limited: To require any person convicted of assault, criminal damage to property, mob action, disorderly conduct or certain weapons offenses to serve between 30 and 120 hours of community service as a part of any sentence imposed, other than incarceration. The Senate passed the bill and referred it to the House for consideration.

The House replaced every word of SB 1153 as passed by the Senate except the enabling clause. The bill was retitled "An Act to Create a Safe Neighborhood Law" (the Safe Neighborhood Law). Under the new title, SB 1153 became nine articles of 161 pages amending the WIC Vendor Management Act (410 ILCS 255/1 *et seq.* (West 1992)), the Firearm Owners Identification Card Act (430 ILCS 65/1 *et seq.* (West 1992)), the Illinois Vehicle Code (625 ILCS 5/1—100 *et seq.* (West 1992)), the Juvenile Court Act of 1987 (705 ILCS 405/1—1 *et seq.* (West 1992)), the Criminal Code of 1961 (720 ILCS 5/1—1 *et seq.* (West 1992)), the Cannabis Control Act (720 ILCS 550/1 *et seq.* (West 1992)), the Illinois Controlled Substances Act (720 ILCS 570/100 *et seq.* (West 1992)), the Rights of Crime Victims and Witnesses Act (725 ILCS 120/1 *et seq.* (West 1994)), and the Unified Code of Corrections (730 ILCS 5/1—1—1 *et seq.* (West 1992)). In addition, the Safe Neighborhood Law created the Secure Residential Youth Care Facility

Licensing Act (730 ILCS 175/45—1 *et seq.* (West 1994)), added a Secure Residential Youth Care Facility Fund to the State Finance Act (30 ILCS 105/5.400 (West 1994)), and added article 17B, dealing with WIC fraud, to the Criminal Code (720 ILCS 5/17B—1 *et seq.* (West 1994)).

SB 1153 was passed as amended by both houses. The bill was signed into law by the Governor and became effective January 1, 1995.

■ On appeal, defendant asserts Public Act 88—680 contains "a litany of unrelated amendments" and "new matters" which render the entire act unconstitutional. In particular, defendant argues that under the single subject rule a bill amending the Criminal Code cannot also amend the Juvenile Court Act of 1987, citing *In re Armour*, 59 Ill. 2d 102, 104-05, 319 N.E.2d 496, 498 (1974) (ruling that the Criminal Code and the Juvenile Court Act are not related to each other), and *In re W.C.*, 167 Ill. 2d 307, 320, 657 N.E.2d 908, 915-16 (1995) (stating that proceedings under the Juvenile Court Act of 1987 are not criminal). Defendant further argues that the amendments to the WIC Vendor Management Act and the creation of article 17B of the Criminal Code dealing with WIC fraud can "by no stretch of the imagination be considered related to either the Criminal Code or the Juvenile Court Act." Defendant finally contends that none of the provisions of SB 1151, as enacted in Public Act 88—680, had anything to do with the original content of SB 1153 as it was first introduced in the Senate and that this alone constitutes a violation of the single subject rule, citing *Rouse v. Thompson*, 228 Ill. 522, 533-34, 81 N.E. 1109 (1907).

The State counters that the provisions of Public Act 88—680 are reasonably related to its purpose—neighborhood safety. More specifically, the State argues that neighborhood safety necessarily and naturally encompasses adult crimes and juvenile offenses and increased penalties and sentencing options because many gang and gun-related crimes involve both adults and juveniles. The State further argues that the amendments to the WIC Vendor-Management Act and the creation of article 17B of the Criminal Code concerning WIC fraud are germane to the issue of safe neighborhoods because such fraud is "pervasive," has a negative impact on individuals who need WIC benefits, and the provisions are part of the legislature's comprehensive attack on crime in neighborhoods.

The amendments to the Criminal Code and the Juvenile Court Act of 1987 are germane to the issue of safe neighborhoods. Although the cases cited by defendant suggest that in some instances a bill amending both the Criminal Code and the Juvenile Court Act violates the single subject rule, that is not the case here. Here, the amendments to

SB 1153 affecting the Criminal Code and the Juvenile Court Act of 1987 share the unitary purpose of proscribing behaviors, some by adults, some by juveniles, that are criminal in nature and detrimental to the community. Further, the amendments to the Unified Code of Corrections and the Juvenile Court Act of 1987 are germane because they share the unitary purpose of prescribing penalties for such behaviors to protect the community from those offenders. Finally, the amendments to SB 1153 creating the Secure Residential Youth Care Facility Licensing Act and adding a Secure Residential Youth Care Facility Fund to the State Finance Act are germane because they provide the means, procedural and financial, to implement the prescribed penalties.

The legislature's inclusion of amendments to the WIC Vendor Management Act and the creation of article 17B of the Criminal Code dealing with WIC fraud is a "natural and logical connection" to the issue of safe neighborhoods. The WIC program provides eligible recipients with vouchers, used like cash, to purchase food and other necessities for themselves and their children. Unfortunately, some recipients exchange the vouchers for illegal controlled substances peddled by drug dealers on neighborhood street corners. The dealers, who frequently have street gang affiliations, take the vouchers to vendors who exchange them for less than their face value in cash. The vendors, in turn, present the vouchers to the government for their full face value. Accordingly, the amendments in SB 1153 addressing WIC fraud address drug- and gang-related activities threatening neighborhood safety and depriving children of WIC benefits. This purpose was expressed by the legislature in the preamble of the WIC fraud act:

> "Because of the pervasive nature of fraud in the Special Supplemental Food Program for Women, Infants and Children (known as WIC) and *the negative effect of that fraud on the People of the State of Illinois and those individuals who need WIC benefits*, the General Assembly declares it to be public policy that Special Supplemental Food Program for Women, Infants and Children (WIC) Benefits Fraud be identified and dealt with swiftly and appropriately *considering the onerous nature of the crime*." (Emphasis added.) Pub. Act 88—680, art. 50, § 50—5, eff. January 1, 1995, codified at 720 ILCS 5/17B—1 (West 1994).

The remainder of the amendments to SB 1153 naturally and logically promote neighborhood safety. The changes to the Firearm Owners Identification Card Act (Pub. Act 88—680, art. 50, § 50—3, eff. January 1, 1995 (codified at 430 ILCS 65/2, 4, 6, 14 (West 1994))) prohibiting possession of firearms by illegal aliens and upgrading certain violations of the Act from a Class A misdemeanor to a Class 3

or 4 felony, combined with the creation of the new criminal offense of gunrunning (Pub. Act 88—680, art. 30, § 30—905, eff. January 1, 1995 (codified at 720 ILCS 5/24—3A (West 1994)) and changes to sections 24—1, 24—3, and 24—3.1 of the Criminal Code regarding the unlawful use of a weapon, the unlawful sale of firearms and the unlawful possession of firearms and firearms ammunition (Pub. Act 88—680, art. 50, § 50—5, eff. January 1, 1995 (codified at 720 ILCS 24—1, 24—3, 24—3.1 (West 1994))), are intended· to discourage the importation of illegal firearms for distribution to gang members.

The changes to the Illinois Vehicle Code (Pub. Act 88—680, art. 20, § 20—900, eff. January 1, 1995 (codified at 625 ILCS 5/6—303, 11—501 (West 1994))) expanding its scope and increasing its penalties for individuals driving under the influence of alcohol or other drugs are intended to protect neighborhood residents from drivers who repeatedly drive while drunk and endanger motorists and pedestrians.

The changes to the Cannabis Control Act (Pub. Act 88—680, art. 25, § 25—10, eff. January 1, 1995 (codified at 720 ILCS 550/10 (West 1994))) and the Illinois Controlled Substances Act (Pub. Act 88—680, art. 25, § 25—15, eff. January 1, 1995 (codified at 720 ILCS 570/410 (West 1994))), requiring 24 months' mandatory probation and imposing certain probation conditions, increase neighborhood safety by placing at-risk individuals under judicial supervision.

Finally, the changes to the Rights of Crime Victims and Witnesses Act (Pub. Act 88—680, art. 35, § 35—15, eff. January 1, 1995 (codified at 725 ILCS 120/4.5, 6 (West 1994))), expanding when crime victims and witnesses are entitled to notification of an offender's release, encourage fuller participation of neighborhood residents in maintaining safety and being aware of activities in their neighborhood.

Accordingly, defendant's contention that various provisions of Public Act 88—680 are not germane to a single expressed purpose is without merit.

■ Next, defendant contends that none of various provisions were related to the original narrow content of SB 1153 and that this alone constitutes a violation of the single subject rule. This issue has been waived. Defendant's assertion of unconstitutionality does not constitute legal analysis. A reviewing court is entitled to have cohesive arguments presented, and arguments not adequately presented on appeal are treated as waived. *Spinelli v. Immanuel Lutheran Evangelical Congregation, Inc.*, 118 Ill. 2d 389, 401, 515 N.E.2d 1272 (1987).

Waiver aside, defendant relies upon *Rouse v. Thompson*, 228 Ill. 522, 533-34, 81 N.E. 1109 (1907), to no avail. In *Rouse*, the court found a public act unconstitutional as a violation of the single subject rule because the title of the act was not broad enough to encompass

the scope of its contents, not because the title and contents of the bill as passed differed from the title and contents of the bill as originally introduced. *Rouse*, 228 Ill. at 533-34. Accordingly, this contention is without merit.

Next, defendant claims she was denied effective assistance of counsel because she was taking psychotropic medication during trial and her defense counsel failed to request a fitness hearing as mandated by section 104—21(a) of the Code of Criminal Procedure of 1963.

■ To establish a claim of ineffective assistance of counsel, a defendant must satisfy the two-prong test of *Strickland v. Washington*, 466 U.S. 668, 686, 80 L. Ed. 2d 674, 692-93, 104 S. Ct. 2052, 2063-64 (1984), and *People v. Albanese*, 104 Ill. 2d 504, 525, 473 N.E.2d 1246 (1984). The defendant must prove that (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's substandard representation so prejudiced defendant as to deny her a fair trial. *Strickland*, 466 U.S. at 687, 80 L. Ed. 2d at 693, 104 S. Ct. at 2064. To prove actual prejudice, a defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 80 L. Ed. 2d at 698, 104 S. Ct. at 2068; *Albanese*, 104 Ill. 2d at 525.

■ The due process clause of the fourteenth amendment prohibits the prosection of a person who is unfit to stand trial. *People v. Brandon*, 162 Ill. 2d 450, 455, 643 N.E.2d 712 (1994). Fitness "refers to a defendant's ability to understand the nature and purpose of the proceedings and to assist in the defense." *People v. Kinkead*, 168 Ill. 2d 394, 407 (1995) (*Kinkead I*). To ensure a defendant's right, the legislature has enacted statutory safeguards. Until December 31, 1996[1], section 104—21(a) of the Code of Criminal Procedure provided that "[a] defendant who is receiving psychotropic drugs or other medications under medical direction is entitled to a hearing on the issue of his fitness while under medication." 725 ILCS 5/104—21(a) (West 1994). Under this version of section 104—21(a), a defendant using psychotropic drugs was presumed unfit to stand trial and the burden

---

[1]The legislature amended this section effective December 13, 1995, to provide "[a] defendant who is receiving psychotropic drugs under medical direction is entitled to a hearing on the issue of his or her fitness while under medication; however, no hearing is required unless the court finds there is a bona fide doubt of the defendant's fitness." 725 ILCS 5/104—21(a) (West Supp. 1995). The Illinois Supreme Court declared this version of the statute unconstitutional in *Johnson v. Edgar*, 176 Ill. 2d 499, 516, 680 N.E.2d 1372, 1380 (1997), on grounds the public act of which it was a part violated the single subject rule of the Illinois Constitution.

devolved to the State to prove otherwise. Accordingly, in *People v. Brandon*, 162 Ill. 2d 450, 458, 643 N.E.2d 712, 716 (1994), the Illinois Supreme Court held that where there was evidence the defendant was using psychotropic drugs at the time of trial, defense counsel's failure to request a fitness hearing denied the defendant effective assistance of counsel. The court reasoned the first prong of *Strickland* was satisfied because the only explanation for counsel's failure to request the required fitness hearing was counsel's failure to comprehend the significance of the defendant's treatment or the defendant's rights under the law. 162 Ill. 2d at 458. Further, the court reasoned the second prong of *Strickland* was satisfied because prejudice was manifest where the defendant would have been entitled to a fitness hearing if defense counsel had informed the trial court of the defendant's use of psychotropic drugs. 162 Ill. 2d at 459.

The Illinois legislature amended section 104—21(a) effective December 31, 1996, to provide "[a] defendant who is receiving psychotropic drugs shall not be presumed to be unfit to stand trial solely by virtue of the receipt of those drugs or medications." 725 ILCS 5/104—21 (West 1996). This is the current statutory law on the matter. Under this version of the statute, even where there is evidence the defendant was using psychotropic drugs at the time of trial, defense counsel's failure to request a fitness hearing is not a *per se* denial of effective assistance of counsel because a defendant using psychotropic drugs is no longer presumed unfit nor automatically entitled to a fitness hearing. Rather, there must be a *bona fide* doubt of the defendant's fitness to stand trial (725 ILCS 5/104—11(a) (West 1996)), arising not solely by virtue of the receipt of psychotropic drugs or medications, but from the defendant's irrational behavior, demeanor at trial or prior medical opinions (*People v. Eddmonds*, 143 Ill. 2d 501, 578 N.E.2d 951 (1991); *People v. Walker*, 262 Ill. App. 3d 796, 803, 635 N.E.2d 684 (1994)).

Recently, in *People v. Kinkead*, 168 Ill. 2d 394, 412-13 (1998), the Illinois Supreme Court held that the current version of section 104—21(a) may not be given retroactive effect. The question, then, is which version of the statute is applicable? If the pre-December 31, 1996, version of section 104—21(a) applies, defense counsel's failure to request a fitness hearing constituted ineffective assistance of counsel. However, if the current version of section 104—21(a) applies, defense counsel's failure to request a fitness hearing did not constitute ineffective assistance of counsel.

As a general matter, fitness determinations are made as of the commencement of trial. *Pate v. Robinson*, 383 U.S. 375, 15 L. Ed. 2d 815, 86 S. Ct. 836 (1966). Defendant's bench trial was commenced and

completed on January 13, 1997. Accordingly, the current version of section 104—21(a) applies and defense counsel's failure to request a fitness hearing was not *per se* ineffective assistance of counsel. Moreover, the defendant has failed to demonstrate that a pretrial fitness hearing would have resulted in a finding that her use of psychotropic drugs rendered her unable to understand the nature and purpose of the proceedings against her or assist in her defense. Indeed, the record on appeal reveals no indication that the trial court, which was in a better position to observe and evaluate the defendant's conduct, perceived anything odd or irrational about the defendant's behavior raising a *bona fide* doubt of defendant's fitness.

Because there was no automatic entitlement to a fitness hearing and because there is no indication that defendant's use of psychotropic drugs so affected her ability to meaningfully participate in her defense and cooperate with counsel as to raise a *bona fide* doubt of her fitness to stand trial, defense counsel's failure to request a fitness hearing will not support a claim of ineffective assistance of counsel. An attorney is not required to do that which is futile and which would not have affected the outcome of defendant's case.

For the foregoing reasons, we affirm the defendant's conviction and sentence.

Affirmed.

BUCKLEY, P.J., and O'MARA FROSSARD, J., concur.