No. 4--97--0221    

________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

________________________________________________________________

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court

OF ILLINOIS, ) of Fulton County.

) 

Plaintiff-Appellee, )

      )

v. ) No.  95--CF--280

)

LONNIE C. DAINTY,    ) Honorable 

) Patricia A. Walton,

Defendant-Appellant. ) Judge, Presiding.

_________________________________________________________________

PRESIDING JUSTICE GEIGER delivered the opinion of the court:

Following a jury trial, the defendant, Lonnie C. Dainty, was convicted of armed violence (720 ILCS 5/33A--2 (West 1994)) and sentenced to 10 years’ imprisonment.  On appeal, the defendant argues that 
[Nonpublishable material under Supreme Court Rule 23 omitted.]
 
Public Act 88--680 (Pub. Act 88--680, eff. January 1, 1995) is unconstitutional because it violates the single subject rule of the Illinois Constitution (Ill. Const. 1970, art. IV, §8(d)).

FACTS

The following facts are relevant to this appeal.  On December 30, 1995, the defendant was charged by information with attempted murder (720 ILCS 5/8--4(a), 9--1 (West 1994)), aggravated battery (720 ILCS 5/12--4(a) (West 1994)), and armed violence (720 ILCS 5/33A--2 (West 1994)).  The information alleged that, on December 29, 1995, the defendant stabbed Steve Thornhill in the chest, head, back, and body with a knife with a blade of at least three inches in length.

[Nonpublishable material under Supreme Court Rule 23 omitted.]

THE CONSTITUTIONALITY OF PUBLIC ACT 88--680

We now address the defendant’s argument that section 33--A--

3(a--5) of the Criminal Code of 1961 (Criminal Code) (720 ILCS 5/33A--3(a--5) (West 1996)), which increased the minimum sentence for the offense of armed violence from 6 years to 10 years, is unconstitutional and therefore invalid.  In support of his argument, the defendant contends that Public Act 88--680, in which the legislature enacted section 33A--3(a--5), violates the single subject rule of the Illinois Constitution of 1970 (Ill. Const. 1970, art. IV, §8(d)).  The State urges us not to consider the defendant’s constitutional challenge to Public Act 88--680 because this act has already been codified.  See 
State v. Mabry
, 460 N.W. 2d 472, 475 (Iowa 1990).  However, as noted above, a challenge to the constitutionality of a statute can be raised at any time.  
People v. Bryant
, 128 Ill. 2d 448, 454 (1989).  We therefore turn to the merits of this issue.

1.  Single Subject Rule

The single subject rule is a substantive requirement for the passage of bills and is therefore subject to judicial review.  
Johnson v. Edgar
, 176 Ill. 2d 499, 514 (1997).  The rule exists to prevent the passage of legislation that, standing alone, could not muster the votes necessary for passage.  
People v. Reedy
, 295 Ill. App. 3d 34, 41 (1998).  The rule also serves to facilitate orderly legislative procedure.  
Reedy
, 295 Ill. App. 3d at 41.  

The term "subject" is comprehensive in scope and must be construed liberally.  
Reedy
, 295 Ill. App. 3d at 41.  So long as the provisions of a bill have a "natural and logical connection," the subject matter of that bill may be as broad as the legislature chooses.  
Reedy
, 295 Ill. App. 3d at 41.  The legislature violates the single subject rule only when it includes within a single bill incongruous and unrelated matters that by no fair intendment have any legitimate relation to each other.  
Reedy
, 295 Ill. App. 3d at 41.  

In 
Fuehrmeyer v. City of Chicago
, 57 Ill. 2d 193 (1974), our supreme court held that Public Act 77--1818 was unconstitutional because it violated the single subject rule.  The act at issue in 
Fuehrmeyer
 purported to exclusively grant to the State the power to regulate certain professions and occupations listed in 30 separate acts, ranging from architects to funeral directors to water well contractors.  
Fuehrmeyer
, 57 Ill. 2d at 195.  The supreme court held that this act violated the single subject rule because each of the 30 regulated professions and occupations was a separate subject.  
Fuehrmeyer
, 57 Ill. 2d at 203-05.

The supreme court recently revisited the issue of the single subject rule in 
Johnson v. Edgar
, 176 Ill. 2d 499 (1997).  At issue in 
Johnson
 was whether Public Act 89--428, which was entitled "An Act in relation to public safety," violated the single subject rule. 
 
Johnson
, 176 Ill. 2d at 503.  As enacted, Public Act 89--428 contained six articles and encompassed subjects including child sex offenders, employer eavesdropping, and environmental impact fees imposed on the sale of fuel.  
Johnson
, 176 Ill. 2d at 517. 

The supreme court determined that the act violated the single subject rule because the discordant provisions contained therein did not possess a natural and logical connection.  
Johnson
, 176 Ill. 2d at 517.  The court noted that the act amended a multitude of provisions in over 20 different acts and created several new laws.  
Johnson
, 176 Ill. 2d at 516-17.  In addition, the supreme court rejected the defendants’ argument that the provisions of the act were confined to the single subject of public safety.  
Johnson
, 176 Ill. 2d at 517.  The court noted that, if it were to conclude that the discordant provisions contained in the act were related under the subject of public safety, it would be eliminating the single subject rule as a meaningful check on the legislature’s actions.  
Johnson
, 176 Ill. 2d at 517-18.   

Similarly, in 
People v. Reedy
, 295 Ill. App. 3d 34 (1998), this court found that Public Act 89--404 violated the single subject rule.  In its enacted form, Public Act
 89--404 contained 10 sections covering subjects such as the removal of the homestead exemption from property subject to certain civil forfeiture; the burden of proof for a criminal defendant asserting the insanity defense; truth-in-sentencing legislation; and new procedures for the perfection and attachment of hospital liens.  
Reedy
, 295 Ill. App. 3d at 42.  The State in 
Reedy
 argued that the act embraced the single subject of governmental matters.  
Reedy
, 295 Ill. App. 3d at 43.  However, after reviewing the act, this court found the alleged "subject" to be too broad to satisfy the Illinois Constitution’s mandates.  
Reedy
, 295 Ill. App. 3d at 43.  We were unable to identify the natural and logical connection uniting civil forfeiture, criminal sentencing, and hospital liens and therefore held that the act violated the single subject rule.  
Reedy
, 295 Ill. App. 3d at 42.

2.  Public Act 88--680

Turning to the instant case, Public Act 88--680 was introduced as Senate Bill 1153 on January 12, 1994.  Entitled "A Bill for an Act to amend the Criminal Code of 1961," Senate Bill 1153 originally amended the Criminal Code to require a trial court to impose a sentence of community service on any person convicted of or placed on supervision for assault, criminal damage to property, certain weapons violations, mob action, or disorderly conduct.  On April 13, 1994, the Senate amended the bill to provide that, if imprisonment is imposed upon a defendant convicted of or placed on supervision for the aforementioned crimes, a community service sentence was not required.  On April 14, 1994, the Senate passed the bill as amended.

When Senate Bill 1153 reached the House of Representatives,  amendment 13 was placed on the bill.  Amendment 13, entitled the "Safe Neighborhoods Bill," addressed a different array of subjects including gun trafficking, exploitation of children, and enhanced penalties for (1) providing alcohol to minors; (2) the assault of a police officer; and (3) drive-by shootings.  With this amendment, the House of Representatives passed Senate Bill 1153, and the bill was sent back to the Senate.

The Senate and the House could not agree on which provisions of Amendment 13 should stand.  As a result, a conference committee was formed.  In its final form, the bill was entitled the "Safe Neighborhoods Law," and it covered a wide array of subjects contained in 9 articles and 161 pages.  

Specifically, article 5 of the act, entitled "Juvenile Justice," amended the Juvenile Court Act of 1987 (Juvenile Court Act) (705 ILCS 405/1--1 
et seq.
 (West 1992)) to (1) expand the types of offenses for which a minor can be tried as an adult; (2) extend the time period that the State can continue adjudicatory hearings; (3) require imprisonment for minors adjudicated delinquent for first degree murder; and (4) extend the automatic termination date of wardship proceedings for minors.

Article 15, entitled "Gangs," amended the Criminal Code (720 ILCS 5/1--1 
et seq.
 (West 1992)) to increase the penalties for the offense of intimidation.  Article 15 also amended the Unified Code of Corrections (Unified Code) (730 ILCS 5/1--1--1 
et seq.
 (West 1992)) to allow extended-term sentences for defendants who commit felonies in furtherance of an organized gang and to require that defendants sentenced to probation, conditional discharge, or supervision for a gang related crime perform community service.

Article 20, entitled "Alcohol Abuse," amended the Illinois Vehicle Code (625 ILCS 5/1--100 
et seq.
 (West 1992)) to provide for both minimum and increased penalties for driving with a revoked or suspended license and to increase the penalty for aggravated driving under the influence of alcohol or drugs (DUI).

Article 25, entitled "Drug Abuse," amended the Cannabis Control Act (720 ILCS 550/1 
et seq.
 (West 1992)) and the Illinois Controlled Substances Act (720 ILCS 570/100 
et seq.
 (West Supp. 1993)) to (1) specify a 24-month term of probation for first time offenders; (2) require certain conditions of probation; and (3) allow evidence at sentencing hearings of a person’s prior drug convictions that were discharged or dismissed.

Article 30, entitled "Firearms," amended the Criminal Code to (1) create the offense of gunrunning; (2) increase the penalty for defacing identification marks of firearms; (3) prevent a sheriff from trading or selling a confiscated weapon; and (4) provide that possession of a firearm in violation of bail conditions is a felony.  

The remaining articles of Public Act 88--680 were untitled. Article 35 amended the Criminal Code to (1) increase the penalty for attempted murder, aggravated battery with a firearm, and aggravated discharge of a firearm.  Article 35 also amended the  Rights of Crime Victims and Witnesses Act (725 ILCS 120/1 
et
 
seq.
 (West 1994)) to expand the duties of the State’s Attorney and the Prisoner Review Board to give victims and witnesses in juvenile cases involving a violent crime various types of information relating to the case.  In addition, Article 35 amended the Unified Code to require notification of a person’s escape, parole, release, or placement in a halfway house to victims, witnesses, prosecutors, and law enforcement officials.

Article 40 amended the Criminal Code to increase the penalty for compelling the membership of persons in an organization through the use of unlawful means.

Article 45 created the Secure Residential Youth Care Facility Licensing Act (730 ILCS 175/45--1 
et seq.
 (West 1994)), which requires the Department of Corrections to establish a licensing system for secure residential youth facilities.  Article 45 also amended (1) the State Finance Act (30 ILCS 105/1 
et seq.
 (West 1994)) by adding the Secure Residential Youth Care Facility Fund to the list of special funds; (2) the Unified Code to establish an interagency review committee to determine whether a minor placed with the Department of Children and Family Services should be committed to the Department of Corrections; and (3) the Private Correctional Facility Moratorium Act (730 ILCS 140/1 
et seq.
 (West 1994)) to create an exemption from the general prohibition against privately run correctional facilities for juvenile residential facilities.

Article 50 amended the WIC Vendor Management Act (WIC Act) (410 ILCS 255/1 
et seq.
 (West 1992)) to (1) expand the types of business entities that may be subject to monetary penalties for violations of the Act; (2) delete language allowing investment of penalty money; (3) delete language requiring that money received in penalties by the Department of Public Health may only be used to administer the Act; and (4) require the Department of Public Health to make rules concerning administrative appeals from sanctions imposed upon the new business entities subject to sanctions under the Act.   

Article 50 also amended the Firearm Owners Identification (FOID) Card Act (430 ILCS 65/0.01 
et seq.
 (West 1992)) to (1) require that each FOID card applicant certify that he is not an illegal alien; (2) give the Department of State Police the authority to deny an application for a FOID card or to revoke and seize a FOID card if it finds that the person is an illegal alien; (3) require that FOID card expiration dates be conspicuously displayed on the card’s face; and (4) increase the penalties for possession of a firearm without a valid FOID card.  

Article 50 also amended the Juvenile Court Act to provide that, in juvenile cases where the minor is not sent to prison and where the court finds that the delinquent conduct was gang related or involved an illegal use of a firearm, the court shall require 30 to 120 hours of community service as a condition of supervision.  Article 50 further amended the Criminal Code to expand the scope of the offenses of prostitution, solicitation of a sexual act, pandering, pimping, juvenile pimping, and exploitation of a child.   Additionally, article 50 created the offense of Women, Infants, Children (WIC) Benefits Fraud (720 ILCS 5/17B--1(West 1994)) and established a range of penalties and required forfeiture of items of value either obtained through WIC fraud or used to commit WIC fraud.  Article 50 also increased the penalties for unlawful use of weapons, unlawful sale of firearms, unlawful possession of firearms, and armed violence.  Furthermore, article 50 amended the Wrongs to Children Act (720 ILCS 150/0.01 
et seq.
 (West 1994)) to expand the scope of the act pertaining to the sexual exploitation of a child.  

Senate Bill 1153 was passed by both the House and the Senate and was signed into law on December 15, 1994.

3.  Analysis

After careful review of these articles, we hold that Public Act 88--680 violates the single subject rule and is unconstitutional in its entirety.  As indicated above, Public Act 88--680 began as a narrowly tailored bill that imposed a sentence of community service for certain types of criminal offenses.  However, Senate Bill 1153 became the "Safe Neighborhoods Law," which (1) created the new crime of gunrunning; (2) established a licensing system for secure residential youth facilities; and (3) created the new crime of WIC Benefits Fraud.  This bill expanded the types of business entities that could be subject to monetary penalties for violations of the WIC Act.  The bill also changed the penalties for driving with a revoked or suspended license and for aggravated DUI.  Additionally, the bill prevented a sheriff from trading or selling a confiscated weapon and required the Department of Corrections to provide notification of the escape, parole, or release of a criminal to victims, witnesses, prosecutors, and law enforcement officials.  In sum, Public Act 88--680 contained a multitude of provisions and created several new laws in unrelated matters.  

We do not believe that the many discordant provisions in Public Act 88--680 can be considered to possess a natural and logical connection to neighborhood safety.  See 
Johnson
, 176 Ill. 2d at 517.  We fail to see the relationship between such subjects as the imposition of monetary penalties upon business entities for the violation of the WIC Act, the creation of a Secure Residential Youth Care Facility Licensing Act, and the imposition of enhanced criminal penalties.  Moreover
, if we were to conclude that the many discordant provisions contained in this act were nonetheless related because of a greater connection to the notion of neighborhood safety, we essentially would be eliminating the single subject rule as a meaningful constitutional check on the legislature’s actions.  
Johnson
, 176 Ill. 2d at 517-18.  

The legislative debates regarding Senate Bill 1153 support our conclusion.  When Senate Bill 1153 was sent to the House, the bill purported to impose a sentence of community service for certain offenses.  When Senate Bill 1153 returned from the House, it contained nine articles addressing a broad range of subjects.  In presenting the bill to the Senate for final action, Senator Dudycz stated to his colleagues that the bill contained three major components.  The first component dealt with prostitution, juvenile pimping, child pornography, fraud in the WIC program, the criminal use of firearms, and community service sentencing.  The second component dealt with the transfer of minors to secure residential facilities.  The third component contained 14 proposals from the "Mayor’s Illinois Safe Neighborhoods" bill.  88th
 Ill. Gen. Assem., Senate Proceedings, December 1, 1994, at 45-46 (statements of Senator Dudycz).  Such comments would appear to contradict the State’s assertions that the entire Act relates to neighborhood safety.

Furthermore, during the debate, Senator Molaro indicated that he intended to vote in favor of the bill but stated, "I don’t like the privatization part of this bill. *** [B]ut the rest of the bill is terrific."  88th
 Ill. Gen. Assem., Senate Proceedings, December 1, 1994, at 67 (statements of Senator Molaro).  In addition, Representative Black stated, "I fully intend to vote 'aye,' but *** [w]hat I have some problem with is requiring a mandatory jail sentence for a repeat DUI offender."  88th
 Ill. Gen. Assem., House Proceedings, December 1, 1994, at 87 (statements of Representative Black).  

As mentioned above, the purpose of the single subject rule is to " 'prevent the combination of unrelated subjects in one bill to obtain support for the package as a whole, when the separate parts could not succeed on their individual merits.' "  
Reedy
, 295 Ill. App. 3d at 43, quoting 
County of Kane v. Carlson
, 116 Ill. 2d 186, 214 (1987).  Although we have no way of knowing whether the separate parts of Senate Bill 1153 could have succeeded on their individual merits, the comments made by Senator Molaro and Representative Black confirm that, with respect to Senate Bill 1153, the purposes of the single subject rule were not served.  See generally 
Reedy
, 295 Ill. App. 3d at 43.

In so ruling, we note that the Illinois Appellate Court, First District, recently addressed a single subject challenge to Public Act 88--680 in 
People v. Wiggins
, No. 1--97--0961 (August 17, 1998).  In 
Wiggins
, the defendant argued that the amendments to the WIC Act were not related to the amendments made to the Criminal Code or the Juvenile Court Act.  
Wiggins
, slip op. at 2.  The court in 
Wiggins
 rejected the defendant’s argument and held that Public Act 88--680 did not violate the single subject rule of our state constitution.  
Wiggins
, slip op. at 4.  

In so ruling, the court stated:

"The legislature’s inclusion of amendments to the WIC Vendor Management Act and the creation of article 17B of the Criminal Code dealing with WIC fraud is a 'natural and logical connection' to the issue of safe neighborhoods.  The WIC program provides eligible recipients with vouchers, used like cash, to purchase food and other necessities for themselves and their children.  Unfortunately, some recipients exchange the vouchers for illegal controlled substances peddled by drug dealers on neighborhood street corners. *** Accordingly, the amendments in [Senate Bill] 1153 addressing WIC fraud address drug- and gang-related activities threatening neighborhood safety and depriving children of WIC benefits."  
Wiggins
, slip op. at 3.

The court further noted that the remainder of the amendments contained in Senate Bill 1153 "naturally and logically promote neighborhood safety."  
Wiggins
, slip op. at 3.

However, as noted above, we fail to see the "natural and logical connection" uniting such matters as monetary penalties for certain business entities in violation of the WIC Act, the licensing of secure residential youth facilities, and enhanced criminal penalties for certain offenses.  In fact, our review of the various provisions of the act indicates that the legislature included several incongruous and unrelated matters that by no fair intendment have any legitimate relation to each other.  See 
Johnson
, 176 Ill. 2d at 517.  Although legislative enactments generally enjoy a presumption of constitutionality (see 
Reedy
, 295 Ill. App. 3d at 41), we are compelled to declare Public Act 88-680 unconstitutional as it fails to comport with the mandate of the Illinois Constitution’s single subject rule.

In addition, we reject the State’s reliance upon 
People v. Pitts
, 295 Ill. App. 3d 182 (1998).  Rather, we believe that the holding in 
Pitts
, in fact, supports our conclusion.  In 
Pitts
, the Appellate Court of Illinois, Fourth District, held that, although the first nine sections of Public Act 89--404 (Pub. Act 89--404, eff. August 20, 1995) concerned some aspect of the criminal justice system, the act as a whole violated the single subject rule because the last section of the act instead pertained to criminal law or criminal procedure.  
Pitts
, 295 Ill. App. 3d at 185-90.

Accordingly, we hold that Public Act 88--680 was enacted in violation of the single subject rule of our state constitution and is therefore invalid.  While we certainly hesitate to invalidate this comprehensive legislative act, we are nonetheless bound to abide by the requirements of our constitution.  We therefore remand the cause for a new sentencing hearing.  The trial court is ordered to sentence the defendant according to the sentencing provisions in effect prior to the enactment of Public Act 88--680.  We note that our ruling does not address the substantive constitutionality of Public Act 88--680's individual provisions.  Rather, our ruling goes only to the structure of the act and manner in which it was enacted.  Therefore, the legislature is free to revisit Public Act 88--680's various provisions in future legislation.  See 
Reedy
, 295 Ill. App. 3d at 44.

CONCLUSION

We conclude that 
[Nonpublishable material under Supreme Court Rule 23 omitted.]
  Public Act 88--860 is unconstitutional in its entirety, and the defendant must be resentenced according to the sentencing provisions in effect prior to the enactment of Public Act 88--680.  The cause is therefore remanded for a new sentencing hearing in conformity with this opinion. 

For the foregoing reasons, the judgment of the circuit court of Fulton County is affirmed in part and vacated in part, and the cause is remanded for further proceedings consistent with this opinion.

Affirmed in part and vacated in part; cause remanded.

BOWMAN and RAPP, JJ., concur.