THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBBIE J. MOORE, Defendant-Appellant.

Fourth District   No. 4—97—0413

Opinion filed March 18, 1998.—Rehearing denied April 22, 1998.

Daniel D. Yuhas and Lawrence J. Essig, both of State Appellate Defender's Office, of Springfield, for appellant.

Michael D. Clary, State's Attorney, of Danville (Norbert J. Goetten, Robert J. Biderman, and Perry L. Miller, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE STEIGMANN delivered the opinion of the court:

In June 1996, the State charged defendant, Robbie J. Moore, with three counts of aggravated criminal sexual assault (720 ILCS 5/12—14(b)(1) (West 1994)) and one count of aggravated criminal sexual

abuse (720 ILCS 5/12—16(d) (West 1994)). Subsequently, the trial court granted the State leave to amend the aggravated criminal sexual assault charges to three counts of predatory criminal sexual assault of a child (720 ILCS 5/12—14.1 (West 1996)). Defendant waived jury trial, and in January 1997, the court conducted a bench trial and found defendant guilty of all charges. In April 1997, the court sentenced defendant to 20 years in prison on each of the three counts of predatory criminal sexual assault of a child and 7 years in prison for aggravated criminal sexual abuse, with these sentences to be served consecutively. The court also awarded defendant 312 days' credit for time served prior to sentencing.

Defendant appeals, arguing that (1) the State failed to prove him guilty beyond a reasonable doubt of predatory criminal sexual assault of a child and aggravated criminal sexual abuse; (2) his conviction should be reversed because the supreme court has declared unconstitutional the statute which created the offense of predatory criminal sexual assault of a child; (3) because the "truth-in-sentencing" legislation to which the trial court referred at the sentencing hearing violates the Illinois Constitution, this case must be remanded to clarify defendant's entitlement to day-for-day credit for time served; and (4) because defendant received consecutive terms of imprisonment for multiple convictions, he is entitled to multiple credit for time served in custody prior to sentencing. We affirm as modified and remand with directions.

## I. BACKGROUND

At defendant's bench trial, the State's primary witnesses were the three juveniles who were the alleged victims of defendant's crimes.

Counts I and II alleged that between February 1, 1996, and June 10, 1996, defendant knowingly committed an act of sexual penetration with T.C., who was under 13 years of age when the acts were committed, in that defendant placed his penis in T.C.'s mouth.

At the time of the January 1997 bench trial, T.C. was 12 years old. He testified that he met defendant, whom he knew by the name of "Ratt," when Ratt and his girlfriend, Kimberly Harris, moved into the neighborhood. At first, Ratt was nice to T.C.'s brothers and the other 11- or 12-year-old children who hung around Ratt's trailer.

Ratt and Kim spoke to T.C. about what they called the "Inner Circle," which Ratt explained consisted of people who "had powers" and could control other people's minds. Ratt told T.C. he could become a member of the Inner Circle if he passed a test and paid Ratt $50 per month. T.C. "thought it would be cool" to become a member and told Ratt he wanted to join.

On one occasion, because T.C.'s mother said that she would not permit him to spend the night away from home, T.C. pretended that he was going to run away but he actually stayed at Ratt's trailer. At some point during that evening when Ratt and T.C. were alone in one of the trailer's bedrooms, Ratt gave T.C. an envelope with a paper inside. T.C. read the paper that said he had to let Ratt "fondle me and other stuff like that." After T.C. read the paper, Ratt burned it. He also informed T.C. if he did not do what Ratt said, T.C. would die.

Ratt then told T.C. to take his pants off, and T.C. complied, "because I wanted to be in the cult thing." Ratt then made T.C. suck Ratt's penis, and then Ratt sucked T.C.'s penis. T.C. testified that Ratt then "stuck his penis in my butt." T.C. said nothing during all of this because he "really wanted to be in the cult."

After Ratt told T.C. that Ratt was done, they went into the living room, and T.C. fell asleep. He left the trailer around 3 a.m. and returned home. T.C. did not tell anybody about this event until a few months later.

T.C.'s mother grounded him for a month for being out so late, but after that ended, T.C. returned to see Ratt at his trailer. Ratt told T.C. that no one else was present and that if T.C. did the same things again, T.C. would not have to pay $50 that month. Ratt had originally explained to T.C. that the $50 was for "materials and stuff" that Ratt was going to use to teach T.C. about the cult. T.C. testified he agreed, and Ratt made him suck Ratt's penis again, Ratt also sucked T.C.'s penis, and then Ratt again stuck his penis in T.C.'s anus. When Ratt was done, T.C. went home and told no one about the incident until about a month later.

Ratt had T.C. sign a piece of paper (which also contained other names) to signify that T.C. was in the cult. When T.C. testified, the prosecutor showed him a piece of paper bearing his signature and the names of Ratt and other children. T.C. identified the paper as the one he had signed.

According to T.C., A.C.'s mother found a bunch of books and notes that apparently caused her to contact the police regarding Ratt, A.C., and other children. That occurred about a month or so after the last incident involving T.C. and Ratt.

On cross-examination, T.C. at first said that it was painful when Ratt stuck his penis in T.C.'s anus, but he later explained that it was not "really painful because [Ratt] had some cream that I guess numbed it." T.C. claimed that he never had any blood in his underpants as a result of either of these incidents, and he never received any medical treatment. Although T.C. told some of his

friends about "what was going on with the Inner Circle," he never talked to them about how someone got into the Inner Circle.

Count III alleged that defendant committed predatory criminal sexual assault of a child between February 1, 1996, and June 10, 1996, because he knowingly committed an act of sexual penetration with J.G., who was under 13 years of age when the act was committed, in that defendant placed his finger in J.G.'s anus. At defendant's trial, J.G. testified that he was six years old. He had trouble remembering dates but testified that he met defendant, whom he also knew as Ratt, through his cousins. Along with other kids, he visited Ratt's trailer a few times.

During one of J.G.'s visits to Ratt's trailer with several of J.G.'s cousins, J.G. and Ratt were alone in the kitchen when the others left that room. J.G. testified that Ratt then "sticked his finger up my butt." Ratt first told J.G. to get on the ground and J.G. tried to run but Ratt grabbed him and J.G. could not. J.G. explained that he did not yell when Ratt put his finger in J.G.'s anus because Ratt said he would kill J.G.

J.G. was wearing pants, but Ratt did not take the pants down. According to J.G., Ratt was able to put his finger up J.G.'s butt because J.G. had a hole in his pants. J.G. also explained that he had a hole in his underwear as well. When Ratt released J.G., he ran home and told his father, who called the police. J.G. never went over to Ratt's trailer again because Ratt had hurt him.

Count IV alleged that defendant committed aggravated criminal sexual abuse in that between February 1, 1996, and June 10, 1996, he knowingly committed an act of sexual conduct with A.C., who was at least 13 years of age but under 17 years of age, in that defendant fondled her breasts and vagina. At the January 1997 bench trial, A.C. testified that she was 14 years old and had met Ratt the previous spring when he moved into the neighborhood. At first, Ratt and his live-in girlfriend, Kimberly Harris, were friendly to A.C. and the other neighborhood children who hung out at their trailer.

Ratt and Harris mentioned something to A.C. they called the Inner Circle, which Ratt explained was "like something for people who believed in the devil." Ratt gave A.C. some notebooks and books to read that supposedly explained what the Inner Circle was about. Later, A.C. signed a paper to signify her membership in the Inner Circle.

On one particular night, A.C. stayed over at Ratt's trailer, and only A.C., Harris, and Ratt were present. After A.C. put on her night clothes, she told Harris and Ratt that she had a headache and asked for an aspirin. They gave her a little white pill, but it did not have an

effect upon her like an aspirin. Instead, it made her "real drowsy in like the state I couldn't move and everything."

As A.C. lay on the bed wearing a T-shirt and a pair of shorts, she was in the process of falling asleep when Kim and Ratt came in to the trailer's bedroom in which A.C. was lying down. They started touching A.C. on her breasts and between her legs. Harris started first, touching between A.C.'s legs while Ratt "was messing with my breasts." She further explained that he "was squeezing them and stuff" with his hands underneath her shirt. A.C. told them to quit, but they did not listen to her. A.C. testified that at the time, she could barely move.

A.C. could not say how long Ratt and Harris continued this conduct, but after a while they stopped and told A.C. that if she said anything to anybody, Ratt was going to slit her throat.

After Ratt and Harris left the bedroom, A.C. fell asleep. The next morning, she awakened and got dressed, and they threatened her again by telling her that if she said anything to her parents, Ratt was going to slit her throat. When she later went home, she said nothing about these events because she was scared.

As best A.C. could recall, these events occurred in March 1996. T.C.'s mother and stepfather testified that, based upon when they "grounded" T.C. for staying out too late, the events at Ratt's trailer that T.C. testified about apparently occurred in March and early May 1996.

Defendant testified on his own behalf and denied committing any of the alleged offenses. On this evidence, the trial court found defendant guilty of all four charges.

## II. ANALYSIS

### A. Sufficiency of the Evidence

■ Defendant first argues that the State failed to prove him guilty beyond a reasonable doubt of the three counts of predatory criminal sexual assault of a child and aggravated criminal sexual abuse. Citing *People v. Garrett*, 281 Ill. App. 3d 535, 544-45, 667 N.E.2d 130, 136 (1996), defendant contends that to prove predatory criminal sexual assault of a child, the State needed to prove beyond a reasonable doubt the *intrusion* of any part of the body of one person into the sex organ of another; the mere touching of the victim's sex organ is not sufficient.

In response, the State concedes defendant's point that intrusion, not mere touching, is required to sustain his conviction, but the State contends that the evidence, when viewed as a whole, proved intrusion beyond a reasonable doubt. The State points out that although

the six-year-old victim, J.G., testified that he was wearing clothes when defendant stuck his finger in J.G.'s anus, J.G. explained that both his pants and underpants had holes in them that allowed defendant to perform this act. Additionally, other deficiencies in J.G.'s testimony—such as his inability to recall dates and his confusion about where the incident occurred—are all matters which the trier of fact—here, the experienced trial judge—no doubt considered when deciding whether the State had proved these charges beyond a reasonable doubt.

The State also contends that A.C.'s testimony was sufficient to prove defendant guilty of aggravated criminal sexual abuse and that the State was not required to provide corroboration for her testimony. We agree.

In addition, defendant's claim that T.C. cannot be believed because of the lack of medically corroborating evidence is not persuasive. First, no such evidence could be expected regarding T.C.'s claim that defendant forced him to engage in oral sex. Second, given T.C.'s testimony that at least a month passed from the last incident until the police were contacted, we doubt that any medical evidence could then be forthcoming to corroborate T.C.'s claim regarding anal sex. Last, medical evidence is not required to sustain a conviction for criminal sexual assault. *People v. Fryer*, 247 Ill. App. 3d 1051, 1058, 618 N.E.2d 377, 382 (1993).

When a defendant on appeal challenges the sufficiency of the evidence to sustain his conviction, the question for the reviewing court is whether *any* rational trier of fact, viewing the evidence in the light most favorable to the prosecutor, could have found the essential elements of the crime proved beyond a reasonable doubt. *People v. Brown*, 169 Ill. 2d 132, 152, 661 N.E.2d 287, 296 (1996). Viewing the evidence in the record before us in accordance with this standard, we conclude that the trial court, acting as the trier of fact in this case, could have found the essential elements of the crimes of which defendant was convicted proved beyond a reasonable doubt.

## B. Defendant's Claim That His Conviction Should Be Reversed Because the Supreme Court Has Declared Unconstitutional the Statute Which Created the Offense of Predatory Criminal Sexual Assault of a Child

■ Defendant next argues that his conviction of three counts of predatory criminal sexual assault of a child under section 12—14.1 of the Criminal Code of 1961 (Code) (720 ILCS 5/12—14.1 (West 1996)) must be reversed because the statute which created that offense, Public Act 89—428 (Pub. Act 89—428, § 260, eff. December 13, 1995

(1995 Ill. Laws 4506)), has been declared unconstitutional. Defendant correctly points out that the Supreme Court of Illinois in *Johnson v. Edgar*, 176 Ill. 2d 499, 518, 680 N.E.2d 1372, 1381 (1997), concluded that Public Act 89—428 was unconstitutional in its entirety because it violated the single subject rule of the Illinois Constitution.

Defendant further argues that the effect of the supreme court's decision in *Johnson* is to leave the law in force as it existed prior to the adoption of the unconstitutional statute. In other words, because Public Act 89—428 is unconstitutional, the statute it created is void *ab initio*. *People v. Gersch*, 135 Ill. 2d 384, 390, 553 N.E.2d 281, 283 (1990). Defendant claims that because the Code prior to the enactment of Public Act 89—428 contained no such offense of predatory criminal sexual assault of a child, his conviction of that offense is void and must be reversed.

Defendant concedes that Public Act 89—462 (Pub. Act 89—462, § 260, eff. May 29, 1996 (1996 Ill. Laws 642)) in effect reenacted section 12—14.1 of the Code, to again place the offense of predatory criminal sexual assault of a child in the Code, but he asserts that this later enactment does not apply to his case. 720 ILCS 5/12—14.1 (West 1996). Although Public Act 89—462 became effective on May 29, 1996, the charges in this case alleged that defendant committed the offense of predatory criminal sexual assault between February 1, 1996, and June 10, 1996, and defendant contends that the record indicates that the incidents in question likely occurred around or during spring 1996, before the effective date of Public Act 89—462 of May 29, 1996. We agree. Thus, defendant contends that to apply the later-enacted Public Act 89—462 to his conduct in this case would violate the *ex post facto* clauses of the United States and Illinois Constitutions. U.S. Const., art. I, §§ 9, 10; Ill. Const. 1970, art. I, § 16.

The State responds that this court should uphold defendant's conviction because (1) Public Act 89—462, which reenacted the offense of predatory criminal sexual assault of a child, constituted "curative legislation" that validated the legislature's earlier action of enacting section 12—14.1 of the Code as part of Public Act 89—428; and (2) this court can simply change the name of the offense of which defendant was convicted from predatory criminal sexual assault of a child to aggravated criminal sexual assault because the nature and elements of these two offenses are identical, and the name and statutory designation of the offenses constitute a mere formality. We disagree with the State's first argument but agree with its second.

Responding to the State's first argument, we note that the State cites no authority involving a situation like the present case, involv-

ing the creation of a substantive criminal statute. All of the State's cases concern *procedural* issues and are thus totally inapposite. This distinction is critical because a substantive criminal statute defining criminal conduct must be "on the books" before the State may interfere with a person's liberty because he engaged in that conduct. No amount of "curative legislation" can be permitted to contravene this most fundamental of our American legal traditions.

We find the State's second argument persuasive because of the unique statutory history of (1) section 12—14.1 of the Code (720 ILCS 5/12—14.1 (West 1996)), defining predatory criminal sexual assault of a child, and (2) section 12—14 of the Code (720 ILCS 5/12—14 (West 1994)), defining the offense of aggravated criminal sexual assault before the enactment of Public Act 89—428. Public Act 89—428 not only created the offense of predatory criminal sexual assault of a child, but it also amended section 12—14 of the Code, which defined aggravated criminal sexual assault, to delete from that definition certain conduct which in turn became part of the definition of predatory criminal sexual assault of a child. Pub. Act 89—428, § 260, eff. December 13, 1995 (1995 Ill. Laws 4505-06). Specifically, prior to the enactment of Public Act 89—428, section 12—14(b)(1) of the Code read as follows:

"(b) The accused commits aggravated criminal sexual assault if:
(1) the accused was 17 years of age or over and commits an act of sexual penetration with a victim who was under 13 years of age when the act was committed." 720 ILCS 5/12—14(b)(1) (West 1994).

Section 12—14(d) of the Code provided that a conviction of aggravated criminal sexual assault is a Class X felony (720 ILCS 5/12—14(d) (West 1994)).

Section 260 of Public Act 89—428 not only added section 12—14.1 to the Code, but also deleted the above language from the definition of aggravated criminal sexual assault. Pub. Act 89—428, § 260, eff. December 13, 1995 (1995 Ill. Laws 4505-06). The legislature instead chose to include that conduct within section 12—14.1(a)(1), defining predatory criminal sexual assault of a child, which reads as follows:

"(a) The accused commits predatory criminal sexual assault of a child if:
(1) the accused was 17 years of age or over and commits an act of sexual penetration with a victim who was under 13 years of age when the act was committed." 720 ILCS 5/12—14.1(a)(1) (West 1996).

Section 12—14.1(b) of the Code provided that a person who commit-

ted predatory criminal sexual assault of a child as defined in subsection (a)(1) commits a Class X felony (720 ILCS 5/12—14.1(b) (West 1996)).

The new offense of predatory criminal sexual assault of a child, as defined in section 12—14.1 of the Code, also contained a provision that required a sentence of not less than 50 years in prison for a person who committed the conduct described in subsection (a)(1) and who caused great bodily harm to the victim that either resulted in permanent disability or was life threatening. 720 ILCS 5/12—14.1(a)(2), (b) (West 1996). However,. because neither of these aggravating circumstances is present in this case, defendant was convicted of a "standard" Class X felony.

A comparison of section 12—14(b)(1) of the Code (720 ILCS 5/12—14(b)(1) (West 1994)), defining aggravated criminal sexual assault before it was amended by Public Act 89—428, and section 12—14.1(a)(1) (720 ILCS 5/12—14.1(a)(1) (West 1996)), defining predatory criminal sexual assault of a child, as added by Public Act 89—428, reveals that these two offenses possess *exactly* the same elements and provide for *exactly* the same penalty.

We earlier noted defendant's argument that because Public Act 89—428 is unconstitutional in its entirety, the effect of the supreme court's decision in *Johnson* is to leave the law in force as it existed prior to the adoption of the unconstitutional statute. Because we agree with that argument, we conclude that just as Public Act 89—428 failed to establish the new offense of predatory criminal sexual assault of a child, it *equally* failed to amend section 12—14 of the Code by deleting therefrom a definition of aggravated criminal sexual assault which described the *conduct* of which defendant was convicted in this case.

To phrase the matter another way, this court's focus should be on the conduct defendant was convicted of engaging in—*by whatever name*—and not on either the section number of the statute or its name that the parties may have believed described that conduct. We find support for this conclusion by noting that defendant, when. accused of committing predatory criminal sexual assault of a child because—the State alleged—he was 17 years of age and committed an act of sexual penetration with victims under 13 years of age when the act was committed, would prepare to meet the State's allegations as set forth in the charges. The *precise name* of the charges is of little moment. Accordingly, we find no prejudice to defendant in our granting the State's request to change the designation of his convictions from three counts of predatory criminal sexual assault of a child under section 12—14.1(a)(1) of the Code (720 ILCS 5/12—14.1(a)(1)

(West 1996)) to three counts of aggravated criminal sexual assault under section 12—14(b)(1) of the Code (720 ILCS 5/12—14(b)(1) (West 1994)). Further, our granting the State's request to amend the trial court's judgment and sentencing order does not affect defendant's sentences because both crimes are Class X felonies.

Accordingly, under the powers this court possesses pursuant to Supreme Court Rule 366(a)(5) (155 Ill. 2d R. 366(a)(5)), we order on remand that the trial court's judgment and sentencing order be amended to reflect that defendant stands convicted of three counts of aggravated criminal sexual assault, not predatory criminal sexual assault of a child.

## C. Credit Against the Sentence

■ Defendant also argues that the trial court erred by failing to apply sentencing credit of 312 days against all four of his consecutive sentences. Specifically, he contends that the supreme court's decision in *People v. Robinson*, 172 Ill. 2d 452, 459, 463, 667 N.E.2d 1305, 1308, 1310 (1996), required the court to apply defendant's credit to all four sentences. We disagree.

First, we note that defendant has forfeited this issue by failing to file a postsentencing motion, as required by section 5—8—1(c) of the Unified Code of Corrections (Unified Code), if he wishes to challenge some aspect of his sentence on appeal. 730 ILCS 5/5—8—1(c) (West 1996); see *People v. Reed*, 177 Ill. 2d 389, 393-95, 686 N.E.2d 584, 586-87 (1997).

However, even if we did not find forfeiture present, we note that in *Feazell v. Washington*, 291 Ill. App. 3d 766, 768, 684 N.E.2d 1052, 1053 (1997), this court held that *Robinson* does not apply when a defendant is subject to consecutive sentences, as is defendant here. We decline defendant's request to reconsider our decision in *Feazell*.

## D. Truth-In-Sentencing

■ Last, defendant argues that the trial court erred by applying the truth-in-sentencing provisions of section 3—6—3 of the Unified Code (730 ILCS 5/3—6—3 (West Supp. 1995)) to his sentence. Specifically, he contends that the truth-in-sentencing provisions of the Unified Code—which bar him from receiving credit for good conduct—violate the single subject rule of the Illinois Constitution (Ill. Const. 1970, art. IV, § 8(d)). We agree.

This court recently addressed the same issue in *People v. Pitts*, 295 Ill. App. 3d 182, 190 (1998), where we held that Public Act 89—404 (Pub. Act 89—404, eff. August 20, 1995 (1995 Ill. Laws 4306)) violates the single subject rule and is therefore invalid. Accordingly, section 3—6—3 of the Unified Code (730 ILCS 5/3—6—3 (West 1994)),

as it existed before Public Act 89—404 (Pub. Act 89—404, § 40, eff. August 20, 1995 (1995 Ill. Laws 4323-26)), applies to defendant, and he is eligible for day-for-day good-time credit.

We note that the State argues that if we were to find Public Act 89—404 unconstitutional, then we can still affirm the application of the truth-in-sentencing provisions of section 3—6—3 of the Unified Code to defendant's sentence because the legislature reenacted that section in Public Act 89—462, effective May 29, 1996 (Pub. Act 89—462, § 280, eff. May 29, 1996 (1996 Ill. Laws 588, 655-56)). We disagree because, as discussed previously, the record shows that defendant committed the offenses he was convicted of during spring 1996, before the effective date of Public Act 89—462.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's judgment and remand with directions that the court amend (1) the judgment and sentencing order to reflect that defendant stands convicted of three counts of aggravated criminal sexual assault, not predatory criminal sexual assault of a child, and (2) the sentencing order to reflect that defendant is eligible for day-for-day good-time credit as provided in section 3—6—3 of the Unified Code prior to any "truth-in-sentencing" amendments added thereto.

Affirmed as modified and remanded with directions.

GARMAN, P.J., and KNECHT, J., concur.