707 N.E.2d 192 (1998)
302 Ill. App.3d 892
236 Ill.Dec. 347
The PEOPLE of the State of Illinois, Plaintiff-Appellee,
v.
Percy JONES, Defendant-Appellant.
No. 1-97-3747.
Appellate Court of Illinois, First District, Fifth Division.
December 31, 1998.
*194 Michael J. Pelletier, Deputy Defender, Sophia J. Atcherson, Assistant Appellate Defender, Office of the State Appellate Defender, Chicago, for Appellant.
Richard A. Devine, State's Attorney of Cook County, Chicago (Renee Goldfarb, William D. Carroll, Michael P. O'Donnell, of counsel), for Appellee.
Justice GREIMAN delivered the opinion of the court:
After a bench trial, defendant Percy Jones was convicted of two counts of aggravated battery with a firearm under the theory of accountability for the actions of codefendant William Ephraim. For these two convictions, the trial court sentenced defendant to two consecutive terms of 11 years' imprisonment.
On appeal, defendant challenges his convictions on the grounds (1) that his trial counsel was ineffective by eliciting, during the cross-examination of Detective John Halloran, the hearsay statement of Ephraim and by failing to object to the introduction of the portions of defendant's custodial statement that included certain statements of Ephraim; and (2) that the State failed to prove defendant's guilt under the accountability theory. We affirm defendant's convictions.
In addition, defendant contests his sentence on the grounds that (1) credit for time served during his pretrial custody should be applied to each of his consecutive sentences; and (2) the truth-in-sentencing provision enacted in Public Act 89-404 (Pub. Act 89-404, eff. August 20, 1995) is unconstitutional because it violates the single subject rule of the Illinois Constitution (Ill. Const.1970, art. IV, § 8). Regarding sentencing credit, the Illinois Supreme Court recently decided that credit for time served will not apply to each individual consecutive sentence but, rather, will be applied only once. People v. Latona, 184 Ill.2d 260, 278-80, 234 Ill.Dec. 801, 703 N.E.2d 901 (1998). Regarding the constitutional issue, we agree with the appellate decisions holding Public Act 89-404 unconstitutional. Accordingly, we affirm the sentence imposed upon defendant and modify the sentence to correspond with the law in effect prior to enactment of the law held unconstitutional.
On April 10, 1996, gunshots struck and injured two children, five-year-old Andrew White and two-year-old Tierra Moren. There is no dispute that the gunshots were not fired by defendant and his convictions are based on the accountability theory for the actions of Ephraim.
At trial, defendant's five-page handwritten statement was published in its entirety during the testimony of Assistant State's Attorney Daniel Weiss, who interviewed defendant and prepared the statement. Weiss testified that the statement contains everything that defendant told him regarding the shooting.
In his statement, defendant declared that he has been a gang member of the Motown Blackstones since 1989. The territorial boundaries for his gang range from 55th Street to 51st Street and from Marshfield to Union. On April 10, 1996, about 5 p.m., defendant was "hanging out" with several other gang members, including Ephraim, in the vicinity of 53rd and Laughlin, which is within his gang's territory. Defendant heard one of the gang members yell "on that car," which means "on that security," indicating that a rival gang or someone could be there to harm them. Defendant's statement explains that, "if you are a [B]lackstone and hear security yell that, then you do what you can do to protect your territory as a Blackstone." After hearing the words "on that car," defendant went to his own car, retrieved a handgun under the car seat, stood in the middle of the street at the corner of the 5300 block of Laughlin, sighted a gray car going northbound on Laughlin, and fired one shot at the gray car.
Defendant further stated that Ephraim, a fellow gang member, was also present "when security yelled on that car." Ephraim "jumped into his [Ephraim's] car and drove after the gray car." Ephraim, who drives a white car with a license-applied-for sticker, caught up to the gray car on the block between 52nd and 51st Streets. While both *195 cars were traveling northbound at that location and Ephraim's car was behind the gray car, defendant heard shots. When he heard the gunshots, defendant was standing on the corner of 53rd.
After the gunshots, the gray car turned left on 51st Street and Ephraim turned into an alley before 51st Street. Ephraim returned to 53rd and Laughlin, exited his car and left. Defendant saw an ambulance coming, went down the 5100 block of Laughlin, and learned that two children had been shot at 5125 Laughlin.
Five to six hours later, defendant saw Ephraim in the area again. Defendant's statement then expressly provides as follows: "Percy Jones states that at that time, Big Man [Ephraim] stated that he wanted to find his gun. Percy Jones states that Big Man left for a few days and when he saw him again, he talked with him. Percy Jones states that Big Man stated to him that he didn't mean to shoot no kids."
Halimah Muhammad testified that on April 10, 1996, about 4:45 p.m., she was on her front porch at 5125 South Laflin with several other family members. Muhammad heard gunshots and grabbed the children to go into the house. Once inside the house, Muhammad observed that her five-year-old son Andrew had blood on his back from a gunshot wound and the two-year-old daughter (Tierra) of her niece (Asiah Vance) had blood on her abdomen from a gunshot wound. Muhammad ran to a neighbor's house to contact the police and an ambulance, which subsequently transported the children to the hospital.
Asiah Vance, the niece of Muhammad and the mother of two-year-old Tierra Moren, corroborated Muhammad's testimony. Vance added that she first heard gunshots coming from 52nd and Laflin, and about four or five minutes later heard about 10 gunshots, sounding closer. Vance knew defendant from the neighborhood and did not see him when she heard the 10 shots.
Jason Miller testified that, shortly before the shootings, he was sitting on Muhammad's front porch at 5125 South Laflin while visiting his girlfriend Nicole, who is a teenaged daughter of Muhammad, and her family. Miller crossed the street to his house and, while standing outside, he saw two cars coming down the street. Miller saw the gray car followed closely by the white car and recognized the driver of the white car as Ephraim. Miller heard the gunshots and ducked.
Miller acknowledged that he was incarcerated at the time of his testimony, pending his own criminal case. Miller further testified that the first time he spoke to the police on the night of the shootings, he purposely described the second car incorrectly and misidentified the driver of the second car because he did not want to get involved in the matter. The second time Miller spoke to the police that night, he provided the same information to which he testified.
Benjamin Navarro, Allen Wheatley and Robert Davis were in the vicinity at the time of the shootings. All three witnesses testified that they heard multiple gunshots, observed a white car with a license-applied-for sticker in the back window speeding through an alley seconds after hearing the gunshots, and later identified defendant's white car as the car they saw at the time of the shootings. In addition, Navarro testified that, 7 to 10 seconds after he heard three or four shots, he saw the white car in the alley and observed the driver stop the car and throw something out of his driver's side window.
Detective John Halloran testified that he was assigned to investigate the two shootings at 5125 South Laflin. On April 16, 1996, Halloran spoke to Ephraim, who was in custody at that time, and then contacted police officers to locate defendant. About 20 minutes later, certain officers brought defendant to the police station and placed him in an interview room. After asking defendant for general biographical data (e.g., name, birth date, address and gang affiliation), Halloran had no further contact with defendant on that date.
During cross-examination, defense counsel asked Halloran if Ephraim had told Halloran "that he, [Ephraim], fired several shots at a fleeing auto while he was driving his own automobile." The State objected to the question on several grounds, including hearsay. In response, defense counsel argued *196 that the answer would not be hearsay because "it's [a] declaration against penal interest." The court overruled the State's objection. Defense counsel then asked if Ephraim had told Halloran that he (Ephraim) was the driver of the white car and that he (Ephraim) was firing at another car. Halloran answered "[t]hat is one of the things he told me, yes."
During redirect examination of Halloran, the State sought to bring in the rest of Ephraim's entire statement based on the doctrine of completeness. The trial court sustained defense counsel's objection and denied the State's request to enter Ephraim's statement.
Detective Gerard Carroll, together with Detective Ken Boudreau, interviewed defendant on April 16, 1996. After a half-hour interview, Carroll contacted the felony review unit in the State's Attorney office.
After the State concluded its case in chief, defendant filed a motion for directed finding. Following arguments, the trial court denied defendant's motion and defendant rested. The trial court found defendant not guilty of attempted first degree murder, stating that it could not determine the existence of the specific mental state required for that offense. The trial court found defendant guilty of the offense of aggravated battery with a firearm. Thereafter, the trial court sentenced defendant to two terms of 11 years in prison, to be served consecutively, and credited the sentence with 525 days for time served.
On appeal, defendant first claims that his trial counsel was ineffective because he (1) elicited testimony regarding codefendant Ephraim's statements to the police and (2) failed to object to the admission of Ephraim's statements, which were included in defendant's statement.
The well-established, two-prong standard for evaluating a claim of ineffective assistance of counsel requires the defendant to establish that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different. People v. Albanese, 104 Ill.2d 504, 525, 85 Ill.Dec. 441, 473 N.E.2d 1246 (1984) (adopting the test in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). To prove such a claim, defendant must satisfy both prongs of the Strickland test.
To prevail on the first prong, the defendant must establish that his "counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687, 104 S.Ct. at 2063, 80 L.Ed.2d at 693. Counsel's decisions that involve matters of trial strategy will generally not support a claim of ineffective representation. People v. Orange, 168 Ill.2d 138, 153, 213 Ill.Dec. 589, 659 N.E.2d 935 (1995). The defendant bears the burden of overcoming the strong presumption that the contested conduct of counsel was the product of sound trial strategy and not of incompetence. People v. Barrow, 133 Ill.2d 226, 247, 139 Ill.Dec. 728, 549 N.E.2d 240 (1989); see also People v. Thomas, 178 Ill.2d 215, 248, 227 Ill.Dec. 410, 687 N.E.2d 892 (1997) (a review of counsel's actions contains a strong presumption that the conduct fell within the parameters of reasonable professional assistance). "Counsel's competence is to be determined from a consideration of the totality of counsel's conduct, not isolated incidents, and a reviewing court will not extend its inquiry into areas involving the exercise of judgment, discretion, trial tactics or strategy." People v. Janis, 240 Ill.App.3d 805, 815, 181 Ill.Dec. 286, 608 N.E.2d 359 (1992).
We find that defendant cannot establish that his trial counsel's actions were so deficient as required under the first prong of the Strickland test and, therefore, hold that defendant was not denied effective assistance of counsel.
Defendant first challenges his counsel's elicitation, during the cross-examination of an investigating detective (Halloran), of Ephraim's custodial statement that he was driving the white car and firing at another car. In response to the State's hearsay objection regarding this statement, defense counsel argued, and the trial court agreed, that Ephraim's statement was admissible as a declaration against penal interest. We agree and further find that the elicitation of *197 this statement constitutes reasonable trial strategy in an effort to distance defendant from both the act and scene of the shootings.
The admissibility of a statement against penal interest is judged by "whether the declaration was made under circumstances that provide `considerable assurance' of its reliability by objective indicia of trustworthiness." People v. Bowel, 111 Ill.2d 58, 67, 94 Ill.Dec. 748, 488 N.E.2d 995 (1986), citing Chambers v. Mississippi, 410 U.S. 284, 300-01, 93 S.Ct. 1038, 1048-49, 35 L.Ed.2d 297, 311-12 (1973), and People v. Tate, 87 Ill.2d 134, 144, 57 Ill.Dec. 572, 429 N.E.2d 470 (1981). In holding that the involved declaration was admissible in Chambers, the Supreme Court relied on four factors that were considered sufficient indicia of trustworthiness: (1) the statement was made spontaneously to a close acquaintance shortly after the crime occurred; (2) the statement was corroborated by other evidence; (3) the statement was self-incriminating and against the declarant's interest; and (4) there was adequate opportunity for cross-examination of the declarant. Chambers, 410 U.S. at 300-01, 93 S.Ct. at 1048-49, 35 L.Ed.2d at 311-12. The four factors enunciated in Chambers, however, "are to be regarded simply as indicia of trustworthiness and not as requirements of admissibility." Bowel, 111 Ill.2d at 67, 94 Ill.Dec. 748, 488 N.E.2d 995. Accordingly, the existence or nonexistence of the four factors present in Chambers is not determinative of the issue but, rather, the ultimate decision as to admissibility is determined by the totality of the circumstances. See, e.g., People v. Anderson, 291 Ill.App.3d 843, 849, 225 Ill.Dec. 854, 684 N.E.2d 845 (1997); People v. Swaggirt, 282 Ill.App.3d 692, 700, 218 Ill.Dec. 150, 668 N.E.2d 634 (1996).
We reject defendant's argument that the absence of two of the Chambers factors precluded the admissibility of Ephraim's declarations. Defendant observes that, regarding the first factor, Ephraim's statement was not made spontaneously to a close acquaintance shortly after the crime but rather was made to a police officer six days after the crime. However, this court has held that custodial statements made to a State's Attorney and police officers were reliable because they increased the possibility of their own prosecution. People v. Kokoraleis, 149 Ill. App.3d 1000, 1021, 103 Ill.Dec. 186, 501 N.E.2d 207 (1986) ("[g]iven the obvious inculpatory nature of the statements made by both declarants while in custody to the law-enforcement personnel, these statements are more likely than not to be trustworthy"). Regarding the fourth Chambers factor, defendant observes that Ephraim was not available for cross-examination of the statement. However, both the second and third Chambers factors have been satisfied. Ephraim's statement was corroborated by the testimony of the four witnesses who heard the gunshots and identified Ephraim's white car and by the testimony of Miller, who identified Ephraim as the driver of the car. There can be no dispute that Ephraim's declaration was self-incriminating because he admitted that he was driving the white car and firing at the other car. We are persuaded by these factors that Ephraim's statement was admissible under the statement-against-penal-interest exception to the hearsay rule.
Furthermore, we cannot say that defense counsel's strategy in admitting Ephraim's inculpatory declaration was unreasonable. The charges against defendant were premised on his accountability for the actions of Ephraim. Throughout the trial, defense counsel consistently attempted to dissociate his client's conduct from that of Ephraim by attempting to demonstrate that Ephraim acted alone. Under the facts of this case, such strategy cannot be considered outside the bounds of reasonable professional competency.
We also reject defendant's claim that his trial counsel was ineffective because he did not object, on the basis of hearsay, to the emphasized portion of defendant's statement:
"Percy Jones states that 5 to 6 hours later he sees Big Man [Ephraim] in the area again. Percy Jones states that at that time Big Man stated that he wanted to find his gun. Percy Jones states that Big Man left for a few days and when he saw him again, he talked with him. Percy Jones states that Big Man stated to him *198 that he didn't mean to shoot no kids." (Emphasis added.)
A well-established principle provides that trial strategy generally encompasses counsel's decisions "as to when and to what matters objection should be made." People v. Grant, 38 Ill.App.3d 62, 70, 347 N.E.2d 244 (1976); see also People v. Stewart, 24 Ill. App.3d 605, 612, 321 N.E.2d 450 (1974); People v. Rettig, 131 Ill.App.2d 687, 264 N.E.2d 835 (1970), aff'd, 50 Ill.2d 317, 278 N.E.2d 781 (1972). "`All that is required of counsel is that his decisions, when viewed in the framework of trial pressures, be within the range of reasonable actions which might have been taken by an attorney skilled in the criminal law, regardless of the outcome of such decisions.'" People v. Walker, 22 Ill.App.3d 711, 715, 318 N.E.2d 111 (1974), quoting Risher v. State, 523 P.2d 421, 424 (Alaska 1974).
Even assuming arguendo, that the challenged statement in the present case was inadmissible, incompetency of counsel "is not established by mere failure to object to inadmissible evidence." People v. Murphy, 72 Ill.2d 421, 438, 21 Ill.Dec. 350, 381 N.E.2d 677 (1978), cited in People v. Thomas, 215 Ill.App.3d 751, 762, 159 Ill.Dec. 368, 576 N.E.2d 37 (1991) ("defense counsel's failure to object to evidence does not in and of itself establish defense counsel's incompetence"). Moreover, the Illinois Supreme Court repeatedly has held that "[a] defendant is entitled to competent, not perfect or successful, representation." Murphy, 72 Ill.2d at 438, 21 Ill.Dec. 350, 381 N.E.2d 677; People v. Griffin, 178 Ill.2d 65, 91, 227 Ill.Dec. 338, 687 N.E.2d 820 (1997) ("ineffective assistance of counsel refers to competent, not perfect, representation"), citing People v. Palmer, 162 Ill.2d 465, 476, 205 Ill.Dec. 506, 643 N.E.2d 797 (1994); see also Janis, 240 Ill.App.3d at 817, 181 Ill.Dec. 286, 608 N.E.2d 359 (same).
In light of these principles, we find that trial counsel's failure to object to Ephraim's statements included within defendant's custodial statement constituted a strategic choice, which is entitled to deference and is not sufficient to support a claim of ineffective assistance of counsel. Defense counsel cannot be faulted for attempting to exonerate his client from accountability by introducing defendant's complete custodial statement regarding the events and circumstances of the shootings and his association, or lack thereof, with Ephraim. See, e.g., Janis, 240 Ill. App.3d at 816, 181 Ill.Dec. 286, 608 N.E.2d 359 (failure to object to certain testimony and argument was not, by itself, ineffective assistance of counsel); cf. People v. Salgado, 200 Ill.App.3d 550, 553, 146 Ill.Dec. 308, 558 N.E.2d 271 (1990) (ineffective assistance of counsel was established where defense counsel called defendant as a witness and, during direct examination, elicited a confession to an offense).
Second, defendant asserts that the State failed to prove beyond a reasonable doubt that he was guilty of aggravated battery with a firearm under an accountability theory. We disagree.
Whether the evidence is direct or circumstantial, we apply the same standard of review in considering a challenge to the sufficiency of evidence in a criminal case. People v. Pintos, 133 Ill.2d 286, 291, 139 Ill.Dec. 832, 549 N.E.2d 344 (1989); People v. Eyler, 133 Ill.2d 173, 191, 139 Ill.Dec. 756, 549 N.E.2d 268 (1989). Our inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. E.g., People v. Digirolamo, 179 Ill.2d 24, 43, 227 Ill.Dec. 779, 688 N.E.2d 116 (1997) (and cases cited therein). We cannot set aside a criminal conviction unless the evidence is so improbable or unsatisfactory that there remains a reasonable doubt of the defendant's guilt. E.g., People v. Manning, 182 Ill.2d 193, 210, 230 Ill.Dec. 933, 695 N.E.2d 423 (1998).
To convict a defendant based on the theory of accountability, the State must prove beyond a reasonable doubt that: (1) the defendant solicited, aided, abetted, agreed or attempted to aid another person in the commission of the offense; (2) the participation took place either before or during the commission of the offense; and (3) the defendant had a concurrent, specific intent to promote or facilitate the commission of the offense. People v. Martin, 271 Ill.App.3d 346, 351, 208 Ill.Dec. 70, 648 N.E.2d 992 (1995) (affirmed murder conviction under accountability *199 theory); 720 ILCS 5/5-2(c) (West 1996). Evidence of events surrounding and following the commission of a crime is sufficient to show participation in the crime itself for the purposes of the accountability theory. Martin, 271 Ill.App.3d at 352, 208 Ill.Dec. 70, 648 N.E.2d 992. "A defendant is accountable for acts performed by another if he shared a common criminal plan or purpose." In re A.R., 295 Ill.App.3d 527, 535, 230 Ill. Dec. 391, 693 N.E.2d 869 (1998), citing People v. Taylor, 164 Ill.2d 131, 140-41, 207 Ill.Dec. 1, 646 N.E.2d 567 (1995). "The common-design rule provides that where two or more persons engage in a common criminal design or agreement, any acts in the furtherance of that common design committed by one party are considered to be the acts of all parties to the design or agreement and all are equally responsible for the consequences of the further acts." In re A.R., 295 Ill. App.3d at 535-36, 230 Ill.Dec. 391, 693 N.E.2d 869, citing In re W.C., 167 Ill.2d 307, 337, 212 Ill.Dec. 563, 657 N.E.2d 908 (1995); see also Martin, 271 Ill.App.3d at 351, 208 Ill.Dec. 70, 648 N.E.2d 992. "Evidence that a defendant voluntarily attached himself to a group bent on illegal acts with the knowledge of its design supports an inference that he shared the common purpose and will sustain his conviction for an offense committed by another." In re A.R., 295 Ill.App.3d at 536, 230 Ill.Dec. 391, 693 N.E.2d 869. To determine a defendant's accountability, factors to consider include his presence during the commission of the crime without opposing or disapproving it, his continued association with the perpetrator after the criminal act, and his failure to report the crime. Martin, 271 Ill.App.3d at 351, 208 Ill.Dec. 70, 648 N.E.2d 992. Conviction under the accountability theory does not require active participation in the actual criminal offense committed by the principal. People v. Curtis, 296 Ill.App.3d 991, 1001, 231 Ill.Dec. 380, 696 N.E.2d 372 (1998), citing Taylor, 164 Ill.2d at 140, 207 Ill.Dec. 1, 646 N.E.2d 567.
Viewing the evidence in the light most favorable to the prosecution, we find that sufficient evidence established defendant's convictions based upon the accountability theory. The course of events that culminated in the wounding of two children began when a car entered the territory over which defendant and his gang claim suzerainty and were present. Defendant heard one of the gang members yell "on that car." In his statement, defendant defined "on that car" to mean "on that security," indicating that a rival gang or someone was there to harm them. According to defendant, "if you are a [B]lackstone and hear security yell that, then you do what you can do to protect your territory as a Blackstone." In response to this security yell, defendant retrieved his handgun and fired one shot at the passing gray car. In turn, Ephraim, driving his white car, chased the gray car. Ephraim admitted pursuing the gray car and firing shots while chasing it. Miller identified Ephraim as the driver of the white car. All of the occurrence witnesses identified Ephraim's car as the car chasing the gray car and heard the gunshots at that time. These facts and the reasonable inferences from them adequately demonstrate that defendant and Ephraim acted in concert to attack the person whom they perceived as an enemy or dangerous intruder. Defendant fired at the gray car and Ephraim continued that same course of events, albeit while driving a car and not as a pedestrian like defendant. Defendant attempts to distinguish his conduct from Ephraim's by describing his act as "defensive" (firing one shot at the gray car) and Ephraim's action as "offensive" (chasing the gray car). Even accepting defendant's description, in this war zone, allies share the common goal of defeating the "enemy." In addition, defendant failed to report the crime. In light of these circumstances, a rational trier of fact could find the essential elements of the crime beyond a reasonable doubt.
Next, defendant asserts that he should be given credit for his pretrial custody time on each of his consecutive sentences. During the pendency of this appeal, the Illinois Supreme Court decided this issue against defendant's position and held that offenders who receive consecutive sentences shall receive a single credit for each day of custody. People v. Latona, 184 Ill.2d 260, 234 Ill.Dec. 801, 703 N.E.2d 901 (1998). The supreme court reasoned that "to allow an offender sentenced to consecutive sentences two creditsone for each sentencenot only contravenes the legislative directive that his *200 sentence shall be treated as a `single term' of imprisonment, but also, in effect, gives that offender a double credit, when the sentences are aggregated, for each day previously served in custody. That cannot be what the legislature intended." Latona, 184 Ill.2d 260, 271, 234 Ill.Dec. 801, 703 N.E.2d 901 (1998).
Lastly, defendant contends that he should not be subject to the truth-in-sentencing provision of the Unified Code of Corrections (730 ILCS 5/3-6-3(a)(2)(ii) (West 1996)) because Public Act 89-404 (Pub. Act 89-404, eff. August 20, 1995), in which the legislature enacted the subject provision, violates the single subject rule of the Illinois Constitution (Ill. Const.1970, art. IV, § 8(d)) and thus is unconstitutional. We agree.
As acknowledged by the State, Public Act 89-404 has been held unconstitutional on the ground that it violated the single subject rule and the issue currently is pending before the Illinois Supreme Court. People v. Pitts, 295 Ill.App.3d 182, 229 Ill.Dec. 451, 691 N.E.2d 1174 (4th Dist.1998); People v. Reedy, 295 Ill.App.3d 34, 229 Ill.Dec. 603, 692 N.E.2d 376 (2d Dist.1998), appeal granted, 178 Ill.2d 591, 232 Ill.Dec. 851, 699 N.E.2d 1036 (1998).[1] Nevertheless, the State argues that the decisions in Pitts and Reedy applied an overly narrow interpretation of the constitutional provision for the single subject rule and that subsequent codification of the truth-in-sentencing provision cured any defect. We disagree with the State and concur with the analysis set forth in Reedy and Pitts.
The single subject rule provides that "[b]ills, except bills for appropriations and for the codification, revision or rearrangement of laws, shall be confined to one subject." Ill. Const.1970, art. IV, § 8(d). Public Act 89-404 contained 10 sections, covering subjects on civil forfeiture, criminal sentencing, and hospital liens. Pitts, 295 Ill.App.3d at 188-89, 229 Ill.Dec. 451, 691 N.E.2d 1174 (details each section); Reedy, 295 Ill.App.3d at 39-40, 229 Ill.Dec. 603, 692 N.E.2d 376 (same). Even assuming, as now argued by the State, that 9 of the 10 sections could be considered within the designation of one subject for purposes of the constitutional rule, the section enacting an amendment to the Hospital Lien Act clearly bears no relationship to the other sections and thus Public Act 89-404 violates the single subject rule. Pitts, 295 Ill.App.3d at 189, 229 Ill.Dec. 451, 691 N.E.2d 1174 (accepts 9 of the 10 sections as meeting the one subject rule but holds that the section dealing with hospital liens fails the one-subject test); see also Reedy, 295 Ill.App.3d at 42, 229 Ill.Dec. 603, 692 N.E.2d 376 ("this court simply is unable to identify the `natural and logical connection' uniting civil forfeiture, criminal sentencing, and hospital liens"). We agree with the Reedy and Pitts opinions that Public Act 89-404 violates the single subject rule and thus is unconstitutional.[2]
We also reject the State's argument that defendant has failed to raise the issue in a timely manner because the constitutional infirmity was cured by the subsequent codification of the truth-in-sentencing provision in July 1996 and defendant did not *201 challenge the truth-in-sentencing provision before the July 1996 codification. See State v. Mabry, 460 N.W.2d 472 (Iowa 1990) (cure by codification). Under the cure-by-codification principle, a challenge to legislation based on the single subject rule must be brought between the time the legislation is passed and when it is codified. The second district recently rejected the cure by codification argument based on the principle that a constitutional challenge to a statute can be raised at any time. People v. Dainty, 299 Ill. App.3d 235, 237, 233 Ill.Dec. 475, 701 N.E.2d 118 (1998) (this appeal addressed a constitutional challenge based on the single subject rule to a different law), relying on People v. Bryant, 128 Ill.2d 448, 132 Ill.Dec. 415, 539 N.E.2d 1221 (1989). Even assuming that we adopted the cure by codification rule as urged by the State, the rule would not save the unconstitutional provision in the instant defendant's case because the codification of the law in July 1996 occurred after the date of the commission of the subject offenses in April 1996.
Having found that Public Act 89-404 is invalid, defendant is entitled to be sentenced in accordance with the provisions in effect prior to the law enacted by the constitutionally defective act. Therefore, defendant is eligible for day-for-day good-time credit as authorized in section 3-6-3 of the Unified Code of Corrections (730 ILCS 5/3-6-3 (West 1994)).
For all of the foregoing reasons, we affirm the judgment of the trial court in all respects and hereby correct the mittimus to reflect defendant's entitlement to receive the good-conduct credit. See, e.g., Worden, 299 Ill. App.3d 836, 842, 234 Ill.Dec. 271, 702 N.E.2d 611, 616 (1998); Reedy, 295 Ill.App.3d at 44, 229 Ill.Dec. 603, 692 N.E.2d 376.
Affirmed as modified.
HOURIHANE, P.J., and THEIS, J., concur.
NOTES
[1] The majority opinions in the Third District have steadfastly declined to address the constitutionality of the truth-in-sentencing law, holding that the issue is not properly raised on direct appeal. People v. Watford, 294 Ill.App.3d 462, 228 Ill.Dec. 934, 690 N.E.2d 1009 (1997); see also People v. Mosley, 299 Ill.App.3d 725, 234 Ill.Dec. 114, 702 N.E.2d 280 (1998); People v. Blanks, 299 Ill.App.3d 361, 233 Ill.Dec. 697, 701 N.E.2d 547 (1998); see also People v. Gooden, 296 Ill.App.3d 205, 211, 230 Ill.Dec. 584, 694 N.E.2d 215 (5th Dist.1998). The jurisdictional issue raised in the Third District's opinions has been consolidated in the supreme court with the Reedy case through the granting of the petition for leave to appeal in People v. Wilson, No. 4-97-0267 (April 3, 1998) (unpublished Rule 23 order), appeal granted, 178 Ill.2d 595, 232 Ill.Dec. 852, 699 N.E.2d 1037 (1998).
[2] The Second District has adhered to its holding in Reedy in its subsequent opinions (People v. Hindson, 301 Ill.App.3d 466, ___, 234 Ill.Dec. 856, 703 N.E.2d 956, 967 (1998); People v. Worden, 299 Ill.App.3d 836, 838-839, 842, 234 Ill. Dec. 271, 702 N.E.2d 611, 613-614, 616 (1998)). Likewise, the Fourth District's position in Pitts has remained the same (People v. Nicholson, 299 Ill.App.3d 256, 265-66, 233 Ill.Dec. 667, 701 N.E.2d 517 (1998); People v. Wilson, 295 Ill. App.3d 228, 229 Ill.Dec. 649, 692 N.E.2d 422 (1998); People v. Moore, 295 Ill.App.3d 676, 230 Ill.Dec. 553, 694 N.E.2d 184 (1998), overruled in part on other grounds, People v. Dieu, 298 Ill. App.3d 245, 249, 232 Ill.Dec. 572, 698 N.E.2d 663 (1998)).